875 F.2d 831
 13 Fed.R.Serv.3d 763
 THREAF PROPERTIES, LTD., Plaintiff,
John F. Hooley and Wilfred C. Varn, Non-party-Appellants,
v.
TITLE INSURANCE COMPANY OF MINNESOTA, etc., Defendant,
William J. Rish, a/k/a Billy Jo Rish, Defendant-Appellee.
 No. 88-3526.
 United States Court of Appeals,
Eleventh Circuit.
 June 14, 1989.
 
 Wilfred C. Varn, E.C. Deeno Kitchen, Hillary C. Ervin, Ervin, Varn, Jacobs, Odom and Kitchen, Tallahassee, Fla., John F. Hooley, Vega, Brown, Stanley & Martin, Naples, Fla., for appellants.
 Robert P. Gaines, Beggs & Lane, Pensacola, Fla., for Rish.
 Appeal from the United States District Court for the Northern District of Florida.
 Before VANCE and COX, Circuit Judges, and KING,* Chief District Judge.
 VANCE, Circuit Judge:
 
 
 1
 Wilfred C. Varn and John F. Hooley, two attorneys who represented Threaf Properties, Ltd. in an action against Title Insurance Company of Minnesota and appellee William Rish, appeal from an order imposing monetary sanctions under Fed.R.Civ.P. 11. For the reasons stated below, we reverse.
 
 I. Facts
 
 2
 This case arose out of an agreement between Threaf Properties, Ltd. ("Threaf") and Catherine Taylor regarding the construction and management of a residential dwelling. Threaf, a British entity, became interested in purchasing waterfront property in Gulf County, Florida in the spring of 1983. Threaf initiated discussions with Catherine Taylor, president of Multi-Property Services, Inc., a real estate development and management company. Threaf agreed to a package deal whereby Multi-Property Services would provide the land, arrange construction of a residential dwelling, and manage the rental of the property. The total price of the package was approximately $112,000; the cost of the land constituted $55,000 to $60,000. Taylor assured Threaf that she had an exclusive contract with Costabella Development Corporation ("Costabella") to purchase tract eight of the Gulf Pines Development ("Tract Eight"), the land selected for the proposed dwelling.
 
 
 3
 In June of 1983 Threaf forwarded $55,000 to Taylor through its solicitor. Although this money apparently was for the purchase of Tract Eight, no contract for sale of the property was ever drafted or executed. Taylor, however, represented to Threaf that the transaction was progressing without difficulty.
 
 
 4
 In June or early July 1983 Charles Sherrill, an attorney representing Threaf in the transaction, contacted William Rish, an attorney in Port St. Joe, Florida, and asked him to search the title of Tract Eight. Rish agreed and obtained an abstract of title to the property from Gulf County Abstract Company, Inc., which reported that title was held by Costabella. Rish informed Threaf that title was held by Costabella and issued a commitment, dated July 8, 1983, on behalf of Title Insurance Company of Minnesota ("Title Insurance") for a title insurance policy on Tract Eight. The commitment listed Threaf as the proposed insured and Costabella as the title holder. Rish billed Threaf $200 for his work; $75 was attributable to the cost of obtaining the abstract.
 
 
 5
 Gulf County Abstract Company later informed Rish that Gerald Blair, not Costabella, was record owner of the property when the commitment was issued.[1] Rish, however, never conveyed this information to Threaf.
 
 
 6
 After the effective date of the commitment Threaf forwarded an additional $24,000 to Taylor for construction of the dwelling and purchase of furniture. Although no contract for the sale of Tract Eight had been executed, Taylor filed a notice of commencement indicating that a four-bedroom house would be constructed on the tract. This notice of commencement was notarized by Rish's office and may have been prepared by Rish. Construction of the house began. Sometime thereafter Taylor encountered financial difficulties and construction ceased. Taylor returned to England where later she was prosecuted for events relating in part to the Threaf transaction.
 
 
 7
 In November 1983 Costabella acquired Tract Eight from Blair.[2] On March 2, 1984, Rish sent a letter to Taylor in which Rish demanded that Taylor fulfill an oral agreement with Michael Ford, president of Costabella, to purchase the property for which she had filed a notice of commencement. Rish informed Taylor that the improvements on Tract Eight would become part of Costabella's property if she did not purchase the tract. Rish thereafter represented Costabella in a successful quiet title action against Threaf and Taylor. Costabella acquired the improvements Taylor had made on the property with the money Threaf had provided.
 
 II. Procedural Background of this Dispute
 
 8
 In July 1985 Threaf sued Rish and Title Insurance. The original complaint, filed by an attorney not a party to this appeal, alleged that defendants breached their contract to provide accurate title information, Count I, and that defendants negligently failed to exercise due care in searching the title and preparing the commitment, Count II. Count II alleged that defendants knew or reasonably should have known that Threaf sought a title insurance commitment to confirm representations as to the owner of the property in order to decide whether to forward additional sums to Taylor or to attempt to retrieve moneys already disbursed.
 
 
 9
 On December 10, 1985, the district court denied Title Insurance's motion to dismiss Counts I and II. The court granted Rish's motion to dismiss Count I, concluding that Count I alleged no personal contract with Rish and that an agent for a known principal is not liable for a breach between the principal and another party. The court denied Rish's motion to dismiss Count II.
 
 
 10
 In October 1985 Hooley was substituted as counsel for Threaf and on January 7, 1986, Hooley filed a first amended complaint. The amended complaint eliminated Rish from Count I, but added a count against Rish for gross negligence in examining the abstract, Count III, and a count against Rish for breach of a personal services contract to represent Threaf in obtaining and examining an abstract of title for the purpose of issuing a title policy commitment, Count IV.
 
 
 11
 Hooley withdrew from the case on September 12, 1986. After two intervening attorneys, Varn was substituted as counsel of record for Threaf on November 21, 1986. Trial was set for February 17, 1987. On February 5, 1987, Varn moved for leave to file a second amended complaint. Except for adding a count against Gulf County Abstract Company for breach of contract, Count V, the proposed second amended complaint repeated the allegations of the first amended complaint. The district court subsequently entered summary judgment for defendants on the first amended complaint[3] and denied Threaf's motion for leave to file the second amended complaint.
 
 
 12
 Rish filed motions for Rule 11 sanctions against Threaf and all of its successive attorneys of record. After a hearing, the district court ordered sanctions against Hooley in the amount of $750 for having filed the first amended complaint and against Varn in the amount of $500 for having filed the second amended complaint.[4] The court concluded that the breach of contract claim against Rish, Count III, had no basis in law.
 
 
 13
 [U]nder Florida law damages recoverable for breach of contract are limited to those that arise naturally from the breach or that were contemplated at the time the contract was formed as the probable result of a breach.... The natural and probable consequence of misdesignating the owner of property is that the would-be buyer will mistakenly purchase the land from the person misdesignated as the title holder, and yet not get proper legal title. A good faith argument simply cannot be made that it is a natural and probable result of misdesignating the title holder that a purchaser will continue to imprudently rely on an agent who is misappropriating the purchaser's money.
 
 
 14
 ... [P]laintiff asserts that due to the nature of Rish's relationship to both Costabella and Multi-Property Services, Rish was aware of the manner in which Threaf was attempting to acquire tract eight. This contention, however, is not well grounded in fact.
 
 
 15
 Similarly, the court held that the negligence claims against Rish, Counts II and III, were not well grounded in fact because there was no support for the allegation that Rish's misdesignation of the title holder proximately caused Threaf's loss.
 
 
 16
 [U]nder the circumstances of this case Rish could not reasonably have anticipated that the loss the plaintiff suffered would be the likely result of misdesignating the title holder. The evidence merely shows that Rish knew that Threaf was the purchaser and that Taylor was brokering the deal. There is no indication that Rish knew what Taylor had been doing or would do in the future with the plaintiff's money. Similarly, the record is devoid of evidence showing that Rish knew what Taylor had been representing to Threaf regarding the seller of the property.
 
 III. Analysis
 
 17
 Under the 1983 amendments to Rule 11, an attorney who signs a pleading, motion, or other paper warrants that "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose...." Fed.R.Civ.P. 11. Compliance with this rule is judged by an objective standard of "reasonableness under the circumstances." Circumstances taken into account include
 
 
 18
 how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.
 
 
 19
 Fed.R.Civ.P. 11 advisory committee note.
 
 
 20
 The objective standard introduced by the 1983 amendments was intended to strengthen the rule by creating an affirmative duty of inquiry as to law and fact before any pleading, motion, or other paper is submitted. See id. Under the rule the district court must focus on what was reasonable for an attorney to believe at the time the pleadings were filed, not on what the court later finds to be the case. The Advisory Committee Note to Rule 11 emphasizes that
 
 
 21
 [t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.
 
 
 22
 Id. See also O'Neal v. DeKalb County, Ga., 850 F.2d 653, 658 (11th Cir.1988) ("Simply because the district court granted the defendants' motion for summary judgment does not mean that the plaintiffs' action was frivolous.").
 
 
 23
 In Donaldson v. Clark, 819 F.2d 1551 (11th Cir.1987) (in banc), we stated the following with respect to the appropriate standard of appellate review of a district court's imposition of sanctions under Rule 11:
 
 
 24
 Whether (1) factual or (2) dilatory or bad faith reasons exist to impose Rule 11 sanctions is for the district court to decide subject to review for abuse of discretion; on the other hand, a decision whether a pleading or motion is legally sufficient involves a question of law subject to de novo review by this court.
 
 
 25
 Id. at 1556 (citation omitted) (footnote omitted). In reviewing the district court's imposition of sanctions against Hooley and Varn, therefore, we first must decide, under a de novo standard of review, whether the district court was correct in determining that Hooley and Varn filed pleadings that were not well grounded in fact and were not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. If we conclude that the district court was correct, we then must decide whether the court abused its discretion by imposing a $750 fine against Hooley and a $500 fine against Varn.
 
 
 26
 We now examine the legal requirements for each of plaintiff's allegations against Rish and the prefiling inquiry made by attorneys Hooley and Varn to determine if it was reasonable for each of them to believe, at the time each complaint was filed, that these allegations were supported by existing law or a good faith argument for the extension, modification, or reversal of existing law.
 
 A. Breach of Personal Services Contract
 
 27
 Rish agreed to identify the titleholder of Tract Eight for purposes of issuing a title commitment in favor of Threaf. He billed Threaf $125 for his professional services.[5] There is no dispute that when Rish issued the commitment, it incorrectly listed the title owner of Tract Eight. Rish also acknowledged in his deposition that the abstract company later notified him of the error. Rish, however, apparently made no attempt to contact Threaf.
 
 
 28
 Under Florida law, Threaf could recover for this breach of a personal services contract only those damages "which would naturally result from the breach thereof, either as the ordinary consequence of such a breach or as a consequence which may under the circumstances be presumed to have been contemplated by the parties to the contract as the probable result of its breach." First Nat'l Ins. Agency, Inc. v. Leesburg Transfer & Storage, Inc., 139 So.2d 476, 482 (Fla.Dist.Ct.App.1962); see Natural Kitchen, Inc. v. American Transworld Corp., 449 So.2d 855, 860 (Fla.Dist.Ct.App.1984) ("the parties need not have contemplated the precise injuries which occurred so long as the actual consequences could have reasonably been expected to flow from the breach. ... 'It is not necessary that the parties should have given the matter a moment's thought or should have expressed themselves on the subject.' ") (quoting 5 A. Corbin, Corbin on Contracts Sec. 1010 (1964)).
 
 
 29
 Appellants are not subject to being sanctioned under Rule 11, therefore, if they each conducted a reasonable prefiling inquiry, the result of which made it reasonable to believe that Rish knew or should have known that Threaf would rely on his statement as to title and of the damages Threaf might suffer if the title information were incorrect. Accordingly, we must examine each appellant's inquiry and the facts they reasonably believed to be true at the time each complaint was submitted.
 
 
 30
 1. Appellant Hooley: Hooley testified that he relied on the Florida cases regarding reliance on title commitments of Shada v. Title & Trust Co. of Fla., 457 So.2d 553 (Fla.Dist.Ct.App.1984), review denied, 464 So.2d 556 (Fla.1985), and Safeco Title Ins. Co. v. Reynolds, 452 So.2d 45 (Fla.Dist.Ct.App.1984), to support a claim for damages resulting from the breach of contract. Hooley also testified that he learned that Taylor had assured Threaf that she had paid for an irrevocable option from Costabella to purchase Tract Eight. Charles Sherrill, Threaf's attorney, stated that Threaf sought the title policy commitment to confirm Taylor's representations and that it decided to disburse additional funds based on Rish's confirmation that title was held by Costabella.[6] Hooley conferred with Threaf's attorney in the quiet title action and prior attorney in this action. He reviewed the entire file in the quiet title action and reviewed the depositions of Michael Ford, Elizabeth Thompson, and the deposition of William Rish in the quiet title action. Hooley also reviewed Ford's deposition in the criminal prosecution of Taylor in England.
 
 
 31
 From Rish's deposition, Hooley knew that Rish was familiar with Taylor's modus operandi of putting a deposit on a lot and arranging to build on it, either pre-selling or subsequently selling the house and land as a package. Hooley also knew that Gulf Title Abstract Company later informed Rish that title was not held by Costabella and that Rish contacted Taylor regarding the issuance of the commitment in favor of Threaf. Hooley learned that Rish's mother in law, Elizabeth Thompson, accepted money from Taylor to solicit a contract of sale for Tract Eight. Hooley knew that Taylor's notice of commencement was prepared in Rish's office and that Rish had instructed his staff not to issue documents without his review.
 
 2. Appellant Varn
 
 32
 Varn testified that when he entered the case there were pending motions for summary judgment and the discovery deadline was imminent. His request for an extension of time for discovery and his motion to depose Rish were denied. Varn reviewed the pleadings that had been filed in the case and spoke with Threaf's attorney in the quiet title action, who was of the opinion that, based on inside information, Rish should have known the identity of the true owner of Tract Eight. Varn learned that Rish had ushered Taylor around the Gulf County area and was Taylor's guest at a party for prospective buyers from England. Varn reviewed materials sent from England regarding Taylor's criminal prosecution and notes concerning Rish's testimony in Taylor's trial. Varn deposed Charles Sherrill and learned that Rish admitted preparing the notice of commencement. Varn also learned, from information provided by Sherrill to Varn's associate, that Sherrill had told Rish that Threaf had sought title information to confirm Taylor's representations and that Rish had suggested that the most economical method to do this was by issuing a title commitment. From Sherrill's sworn affidavit, Varn learned that Rish knew or had reason to know that Threaf sought the title information to decide whether or not to disburse additional moneys to Taylor. Threaf's representatives assured Varn that Taylor would be helpful in this case and that she had implicated Rish in her scheme.[7]
 
 
 33
 Varn's associate testified that she had read indexes of the Rish and Ford depositions. Ford's deposition indicated that Taylor told him that she was buying property in her own name, obtaining loans to pay for the land, and recovering her money from subsequent purchasers. Threaf's attorney in the quiet title action had suggested that there might have been a lack of consideration in the transaction in which Ford acquired Tract Eight from Gerald Blair. The associate also testified that she reviewed the deposition of Charles Russell, a Threaf shareholder, in which Russell stated that Taylor had represented to Threaf that she had an option with Costabella and that Costabella was the owner of Tract Eight. Russell also testified in the deposition that Threaf released additional funds when the title report confirmed Taylor's representations that title was held by Costabella. Threaf's British solicitor informed Varn's firm that Russell would testify.
 
 
 34
 In addition, both appellants learned before filing each complaint of several conflicts of interest involving Rish that suggest that at the time he issued the title policy commitment, he may have had inside information as to the true title holder to Tract Eight or as to an agreement between Costabella and Taylor for its sale. Rish had often performed legal work for Taylor and a letter from her to Threaf described Rish as her attorney. Rish had performed professional services for Taylor and Multi-Property Services in regard to prior transactions with Costabella. Taylor's notice of commencement listing Costabella as the title holder was prepared in Rish's office. Rish later told Sherrill that he had listed Sherrill as the registered agent on the notice of commencement. Rish's mother-in-law, Elizabeth Thompson, was a realtor with an exclusive listing agreement for Costabella's property. Thompson had introduced Taylor to Costabella's president, Michael Ford, at her home. Thompson later had acted as broker in Taylor's transactions with Costabella. Thompson's statement in Taylor's criminal proceedings indicates that she had received a deposit from Taylor on Tract Eight and transferred the money to Rish to be placed in a trust or escrow account.
 
 
 35
 Rish also represented Costabella and was granted a power of attorney by Ford. Rish had used this power of attorney in handling all the closings for Costabella in Ford's absence. Rish wrote a demand letter to Taylor on behalf of Costabella that referred to an oral agreement for the sale of Tract Eight. Although Rish had performed professional services for Threaf and Taylor in the same transaction, Rish represented Costabella in the quiet title action against Threaf and Taylor. Rish stated in his deposition that he learned six to eight weeks before this suit was filed that Taylor did not have title to the property on which she made improvements with Threaf's money. The record does not reflect any efforts by Rish to notify Threaf of this situation.[8]
 
 
 36
 The record thus indicates that it was reasonable for both appellants to believe that there was support for the allegation that Rish reasonably could have foreseen Threaf's loss. Although an attorney may not blindly accept his client's word, see, e.g., Optical Industries, Inc. v. Cilco, Inc., 610 F.Supp. 656 (M.D.N.C.1985), the record is not inconsistent with Threaf's assertions. It is clear that both appellants satisfied the requirements of Rule 11 by conducting an inquiry that made it reasonable to believe that the facts supported a claim for breach of contract, especially when considered in light of their necessity of relying on an overseas client and prior counsel for information. See Fed.R.Civ.P. 11 advisory committee note. The trial court's finding to the contrary was erroneous.
 
 B. Negligence Claim
 
 37
 We now must examine whether it was reasonable for Hooley and Varn to believe that the negligence claim was well grounded in fact and law. Under Florida law the elements of a cause of action for negligence are as follows:
 
 
 38
 (1) The existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others including the plaintiff;
 
 
 39
 (2) A failure on the part of the defendant to perform that duty; and
 
 
 40
 (3) An injury or damage to the plaintiff proximately caused by such failure.
 
 
 41
 Stahl v. Metropolitan Dade County, 438 So.2d 14, 17 (Fla.Dist.Ct.App.1983). The trial court found that the record supported the presence of the first two requirements. We agree. The issue then is whether the information before appellants when each complaint was filed made it reasonable to believe that Threaf's injuries were proximately caused by Rish's misdesignation of the title holder to Tract Eight and his subsequent failure to notify Threaf of the true title holder.
 
 
 42
 Issues of proximate cause become a question for the jury under Florida law if conflicting inferences as to reasonably foreseeable events can be drawn from the record. "If reasonable men differ, the determination of foreseeability should rest with the jury." Vining v. Avis Rent-a-Car Systems, Inc., 354 So.2d 54, 56 (Fla.1977); see Stirling v. Sapp, 229 So.2d 850 (Fla.1969). The fact that the damage was a result of wrongdoing by a third-party does not break the chain of causation if the intervening criminal act is foreseeable. Vining, 354 So.2d at 55-56; see also Barrett, Daffin & Figg v. McCormick, 362 So.2d 966, 967 (Fla.Dist.Ct.App.1978), cert. denied, 368 So.2d 1362 (Fla.1979).
 
 
 43
 Rish's relationships with both Taylor and Costabella provided a basis for knowing at the time he issued the commitment that the listed title owner was incorrect. Rish had contacted Taylor in regard to the transaction and was familiar with her method of doing business. Rish was notified of the error in the abstract but failed to contact Threaf. Rish knew before he wrote the demand letter to Taylor that she was erecting a house on land she did not own but Rish did not notify Threaf. Taylor's representation that she had an exclusive option with Costabella was an essential element of the transaction. There was evidence that Threaf would not have forwarded the additional $24,000 to Taylor if Rish had alerted Threaf in the commitment that Costabella did not own the land. Moreover, Taylor remained solvent through at least November of 1983. Threaf therefore would have been able to recover moneys already advanced if Rish had alerted Threaf that title was not held by Costabella.
 
 
 44
 The facts discussed above that were known to both appellants at the time each filed his complaint make it more than reasonable for them to have believed that Threaf's injuries were proximately caused by Rish's negligence. We conclude that the trial court's determination to the contrary was erroneous.
 
 IV. Conclusion
 
 45
 Accordingly, we REVERSE the judgment of the district court ordering sanctions against appellants Hooley and Varn.[9]
 
 
 46
 REVERSED.
 
 
 
 *
 Honorable James Lawrence King, Chief U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Blair was deeded the property by Peter Stevens, a limited partner in a partnership in which Costabella was the general partner. Stevens had received Tract Eight on the dissolution of the partnership
 
 
 [2]
 The deed to Costabella, however, was not recorded until March 1984
 
 
 [3]
 Threaf did not appeal from the grant of summary judgment
 
 
 [4]
 The district court concluded that the second amended complaint had been "filed" for purposes of Rule 11. The court also ordered sanctions in the amount of $1,250 against the attorney who signed the original complaint. That attorney is not a party to this appeal
 
 
 [5]
 Rish billed Threaf's attorney $200; of this amount $75 was due to the cost of obtaining the abstract
 
 
 [6]
 Sherrill later stated via sworn affidavit that Rish knew that the purpose of the binder was to assure Threaf in whom title was vested and that the nature of his conversation with Rish was such that Rish knew or should have known that Threaf sought this information for the purpose of deciding whether to disburse more money to Taylor
 
 
 [7]
 Varn ultimately was advised that Taylor would not appear in Florida because of outstanding criminal charges against her
 
 
 [8]
 This conflict of interest not only suggests a heightened level of knowledge of Rish, but also is grounds for disciplinary proceedings. See Florida Bar v. Madsen, 400 So.2d 947 (Fla.1981) (public reprimand for attempting to represent buyers of mobile home when attorney also represented seller); Florida Bar v. Mueller, 351 So.2d 960 (Fla.1977) (disbarment based in part on attorney's conduct in representing buyer in purchase of business and later representing seller in suit against buyer); Florida Bar v. Moore, 194 So.2d 264 (Fla.1966) (three-month suspension for representing both life tenant and trustee); see also Florida Bar v. Shannon, 398 So.2d 453 (Fla.1981) (public reprimand warranted for failing to carry out contract for professional services by overlooking defect in title and for subsequent delay in bringing quiet title action to clear defect)
 
 
 [9]
 Because we have concluded that the district court erred in holding that appellants Hooley and Varn signed pleadings that were not well grounded in fact and were not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, we need not decide whether the fines imposed by the court would have been an abuse of discretion if Hooley and Varn had violated Rule 11