449 So.2d 855 (1984)
The NATURAL KITCHEN, INC., Appellant/Cross-Appellee,
v.
AMERICAN TRANSWORLD CORPORATION, Appellee/Cross-Appellant.
No. 83-1146.
District Court of Appeal of Florida, Second District.
April 13, 1984.
Rehearings Denied May 16, 1984.
*856 Jack M. Larkin of Spicola & Larkin, P.A., Tampa, for appellant/cross-appellee.
John R. Lawson, Jr., of Lawson, McWhirter, Grandoff & Reeves, Tampa, and Jerry Sarbo of Jerry Sarbo, P.A., Tampa, for appellee/cross-appellant.
GRIMES, Acting Chief Judge.
This appeal involves a dispute concerning the refusal of a lessor to consent to a lessee's assignment of a lease.
Commencing in 1976, The Natural Kitchen, Inc. (Natural Kitchen) leased space located on the ground floor of a Tampa office building from Regents Park, a joint venture, for a term of five years. The lease *857 contained a provision that the lessee could not assign the lease without the prior written consent of the lessor. Michael Herstone and Robert Rutenberg, the two stockholders of Natural Kitchen, operated a natural foods restaurant on the leased premises. In 1979, Regents Park sold the building to American Transworld Corporation (Transworld). Thereafter, Natural Kitchen renewed its lease for an additional five years.
In January of 1981, Herstone and Rutenberg contracted to sell Natural Kitchen to certain buyers for $76,000. The sales contract provided that the buyers approve the lease. Natural Kitchen requested Transworld to approve the assignment of its lease to the buyers, advising that "we'd be willing to stay on as co-signers and make sure the rent got paid if anything happened." The prospective buyers had prior business experience and were well financed. They intended to change the name of the restaurant to The Slim Gourmet and to expand the menu so as to make it appealing to a broader range of customers.
After several meetings and an exchange of correspondence, Transworld advised Natural Kitchen in May of 1981 that it refused to consent to the assignment of the lease to The Slim Gourmet. The stated reason for the refusal was the concern that the new restaurant might not succeed or have a favorable impact on the building as a whole. Transworld noted, however, that it would enter into a lease with any prospective restaurant operator for a three year term at current market rates and payment by the lessee of "additional electrical usage." The current market rate was approximately $4.50 per square foot above the rate then being paid by Natural Kitchen under its existing lease. When the buyers balked at these terms, Natural Kitchen offered to lower its selling price to $65,000. Notwithstanding, the buyers felt that they could not economically operate under the proposed new lease and broke off negotiations for the purchase. They ultimately acquired another site for their new restaurant.
Natural Kitchen sued Transworld for damages resulting from its unreasonable refusal to approve the assignment of the lease to The Slim Gourmet. Natural Kitchen also sought a declaratory judgment concerning Transworld's insistence that the lease obligated Natural Kitchen to pay for additional electrical usage and for sales taxes on its payment of ad valorem taxes to Transworld. Before the case went to trial, Natural Kitchen entered into a contract to sell its assets to Ron Pruett for $36,000, but this transaction also fell through because Transworld refused to consent to the assignment of the lease. At the trial, the jury returned a verdict in favor of Natural Kitchen for $37,200. The court entered judgment in this amount, reserving jurisdiction to enter its declaratory judgment relative to the legal disputes over the interpretation of the lease. Thereafter, the court entered an order granting a new trial upon the following grounds:
1. Certain equitable issues requiring a declaratory judgment should have been, but were not, decided by the Court prior to submitting factual issues to the jury. This resulted in prejudicial error to the defendant on the issue of liability.
2. The plaintiff should have pled special damages with particularity. It failed to do so.
3. The plaintiff's claim for damages necessitated proving each and every element of special damages by a preponderance of the evidence. At trial, the plaintiff presented little or no credible evidence to meet this burden of proof. As such, the jury's verdict was contrary to the manifest weight of the evidence.
4. The plaintiff was required to prove its damages with "reasonable certainty." To fulfill this requirement, the jury should have been given a legally supportable "measure of damages" or "yardstick" to guide them in assessing the plaintiff's alleged damages. This was not done. Instead, the jury's verdict was based *858 upon speculation, and a legally inadequate response was given to one of the questions asked by the jury on this subject.
5. The plaintiff was required to prove that its alleged damages were proximately caused by the defendant's refusal to assign, and not from some unrelated cause. At trial, the plaintiff presented no credible evidence to establish this required element of damages.
6. The plaintiff was required to prove that its alleged damages were reasonably foreseeable by the defendant on the date that the 1976 lease was executed. In order to establish this required element of damages, the plaintiff would have had to prove that the defendant knew, or should have known, that the plaintiff would suffer the kind of lost profits claimed if the landlord did not consent to assignment. At trial, the plaintiff presented no credible evidence to establish this required element of damages.
7. The plaintiff, The Natural Kitchen, Inc., did not prove any damages against the defendant arising out of the subject matter of its complaint because it was not a party to the January 28, 1981 Purchase Agreement between Messrs. Herstone and Rutenberg and the principals of The Slim Gourmet, Inc.
The court later entered declaratory judgment in favor of Transworld on the two disputed legal issues. Natural Kitchen appealed the order granting new trial and the final declaratory judgment. Transworld has cross-appealed, asserting that the court erred in failing to grant its motion for directed verdict.
At the outset it should be noted that the unreasonableness of Transworld in refusing to consent to the assignment of the lease is not an issue on this appeal. Pursuant to the rationale of Fernandez v. Vazquez, 397 So.2d 1171 (Fla. 3d DCA 1981), the trial court instructed the jury that a lessor may not arbitrarily refuse to consent to an assignment of a commercial lease which provides, even without limiting language, that a lessee shall not assign or sublease the premises without the written consent of the lessor. The jury resolved this issue favorably to Natural Kitchen, and Transworld has not asserted error on this point.
Appellate review of an order granting a new trial must be directed to the reasons set forth in the trial judge's order. Ortega v. Perrini & Sons, Inc., 371 So.2d 203 (Fla. 2d DCA 1979). Since ground one refers to the two issues encompassed by the declaratory judgment, it is appropriate to address these matters first. The dispute over the payment of additional electrical usage came about as a result of certain provisions in the lease. Paragraph 10A(4) of the printed form of lease provided:
10. Utilities and Services. A. Lessor agrees to furnish or cause to be furnished to the Demised Premises, in common with other lessees where appropriate, the following services,
... .
(4) Electricity for normal office usage, it being agreed that all additional electricity costs stemming from such causes as, but not limited to Lessee's operation of special equipment and from Lessee's extraordinary usage of heating and air conditioning shall be paid by Lessee; ...
Two typewritten paragraphs appear at the end of the lease which read as follows:
37. Lessor agrees rent shall be inclusive of hot water, electricity, and air conditioning charges.
38. In the event electrical charges are determined to be less than Lessor has projected, an appropriate credit will be applied to the Lease.
James Freedman, the building architect and original principal of Regents Park, testified that the printed portion of its lease applied to all tenants but that paragraph 37 was separately negotiated between Regents Park and Natural Kitchen. He stated that in setting the rent to be *859 charged, he took into consideration the amount of electricity he thought that Natural Kitchen would use. When asked on cross-examination why no portion of paragraph 10A(4) had been deleted, he responded that this provision had been modified "in the back." We believe the court erred in concluding that Natural Kitchen was obligated to pay for the additional electrical usage.
Mr. Freedman explained how paragraphs 37 and 38 were added to the contract. These paragraphs reflected a clear intent that the stated rental should include all electricity and air conditioning charges. The typewritten provisions of a contract ordinarily prevail over printed portions which are inconsistent. McDonald v. Connell, 158 So.2d 780 (Fla. 2d DCA 1963). Of further significance is the fact that neither Regents Park nor Transworld ever sought to collect for the additional electrical usage until Transworld first asserted its position in 1981. Where a contract is unclear but the parties have placed a reasonable construction upon it, the court should adopt that construction. Welsh v. Carroll, 378 So.2d 1255 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 643 (Fla. 1980); Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788 (Fla. 2d DCA 1978).
The argument over sales taxes arose because of the lease provision which required the lessee to pay to the lessor its pro rata share of any increase in ad valorem taxes. When an increase occurred, Transworld contended that Natural Kitchen was obligated to pay sales taxes of $45.53 on Natural Kitchen's pro rata share of the increase. The lease provided for the lessee to pay sales taxes on the base rent as annually adjusted by reference to the consumer price index but did not address the question of sales taxes on the payment of pro rata increases in ad valorem taxation.
Section 212.031(2)(a), Florida Statutes (1981), provides that a tenant occupying real property shall pay sales taxes on rentals to his landlord. Florida Administrative Code Annotated Rule 12A-1.70(3) (Supp. 1983) states in pertinent part that:
The [sales] tax shall be paid ... by the tenant or lessee on all considerations due and payable for the privilege of occupancy... . Ad valorem taxes paid by the tenant or lessee to the landlord or lessor or to anyone else on behalf of the landlord are taxable as rent... .
Natural Kitchen relies on Oven v. Dawirs, 419 So.2d 1186 (Fla. 1st DCA 1982), construing section 212.031(3), Florida Statutes (1981), to mean that the landlord in a commercial lease is responsible for the payment of sales taxes where the parties have failed to make provision for this in the rental agreement. We do not find this case controlling because the instant lease did call for the tenant to pay sales tax on the rentals. The only basis for imposing sales taxes upon the payment for the pro rata increase in ad valorem taxes is to view such payment as the equivalent of rent. Thus, the court properly held that Natural Kitchen was obligated to pay sales taxes to Transworld.
We cannot see how the failure to make rulings on the declaratory judgment items prior to submitting the case to the jury could have affected the outcome of the jury's deliberations. Significantly, it was not until the jury returned a verdict in favor of Natural Kitchen that Transworld suggested that the court should have decided these issues before the jury began its deliberations. Moreover, the fact that the parties were disputing these issues appears irrelevant to whether Transworld was unreasonably withholding permission to assign the lease. If Transworld was correct in its interpretations, an assignee of the lease would be bound to make the required payments. If Transworld was wrong, the assignee would not have to pay. Therefore, Transworld could not reasonably require as a condition of its consent to the assignment that the new lessee agree to make the contested payments. In any event, in view of our ruling on the additional electricity usage, any error in not advising the jury concerning Natural Kitchen's *860 obligation to pay the $45.53 was clearly harmless. Since only ground one related to liability, the court erred in granting a new trial on liability.
Grounds two through seven discuss various aspects of damages. With respect to ground two, Transworld never complained in the court below of the failure to plead special damages. Moreover, when Natural Kitchen pled that Transworld's breach caused it to lose the $76,000 sale, it fulfilled any obligation it may have had to allege special damages. See Hazen v. Cobb, 96 Fla. 151, 117 So. 853 (1928). In ground three the court stated that the verdict as related to damages was against the manifest weight of the evidence. By itself this would be an insufficient basis to sustain an order granting a new trial. Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978). However, the court employed the remaining grounds to explain its perception of the shortcomings in proof.
Grounds four through six were generally directed toward the failure to adequately prove foreseeable damages resulting proximately from Transworld's unreasonable refusal to consent to the assignment of the lease. Natural Kitchen's theory of recovery was that except for Transworld's breach, it could have sold its restaurant for $76,000, but that the best price it could obtain only eighteen months later was $36,000. Admittedly, the bona fides of the Pruett contract were subject to attack, and the loss in value of the restaurant may have been due to management inefficiencies, but these were defensive matters. Uncertainty over the amount of damages for breach of a contract or difficulty in proving the exact amount will not prevent recovery where there is a reasonable basis in the evidence for the amount claimed. Linton v. Pension Services Corp., 389 So.2d 247 (Fla. 2d DCA 1980). As for foreseeability, the parties need not have contemplated the precise injuries which occurred so long as the actual consequences could have reasonably been expected to flow from the breach. See Western Union Telegraph Co. v. Redding, 100 Fla. 495, 129 So. 743 (1930); F & B Ceco, Inc. v. Galaxy Studios, Inc., 216 So.2d 75 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 523 (Fla. 1969). As stated in 5 A. Corbin, Corbin on Contracts § 1010, at 79 (1964):
All that is necessary, in order to charge the defendant with a particular loss, is that it is one that ordinarily follows the breach of such a contract in the usual course of events, or that reasonable men in the position of the parties would have foreseen as a probable result of breach. It is not necessary that the parties should have given the matter a moment's thought or should have expressed themselves on the subject.
The thrust of ground seven is that Herstone and Rutenberg, rather than the corporation, were signatories on the broker's printed form of contract to sell "Natural Kitchen, Inc." While not made an issue by their pleadings, Transworld argued in its motion for directed verdict that Natural Kitchen had no standing to recover damages because the stockholders, by virtue of the contract, were actually selling the corporate stock. If Herstone and Rutenberg really were selling the stock, we cannot see how the dispute over the refusal to consent to the assignment of the lease ever arose in the first place. Presumably, if the corporate stock were sold, the new owners would simply continue to operate the restaurant as "The Natural Kitchen, Inc.," the lessee under the lease. Herstone and Rutenberg took the position that as the sole stockholders, they were acting as agents of the corporation to sell the restaurant. A study of the record indicates that all parties proceeded on the premise that the restaurant was being sold. While there was frequent reference to the sale of Natural Kitchen, no one ever suggested that the corporate stock was being sold. In fact, Transworld referred in correspondence to Natural Kitchen's proposed sale of assets to The Slim Gourmet, though Transworld contends that it had not seen the sales contract when this letter was written. At the least, there was a jury question over whether the corporate stock or the assets were being sold, and the matter was extensively covered in closing argument.
*861 Thus, if Transworld were asserting these grounds as the basis for an appeal from a judgment entered against it, we would affirm the judgment because there was competent substantial evidence in this record to support Natural Kitchen's verdict. For this reason, we reject the cross-appeal since all of Transworld's points are predicated upon the subject matter of the grounds contained in the new trial order. However, our standard for reviewing the order granting a new trial is different. In granting a new trial, the trial judge is entitled to consider the quality of the proof, and such an order should not be disturbed in the absence of an abuse of discretion. Cloud v. Fallis, 110 So.2d 669 (Fla. 1959). Viewing this record as a whole, we cannot say that the court abused its discretion in granting a new trial on damages.
We hereby reverse the order granting a new trial as it relates to liability but affirm the order granting a new trial on damages. We reverse the declaratory judgment on the question of additional electrical charges but affirm the judgment as it relates to the collection of sales taxes. We affirm the issues raised by the cross-appeal.
CAMPBELL and LEHAN, JJ., concur.