990 So.2d 708 (2008)
WSG WEST PALM BEACH DEVELOPMENT, LLC, a Florida Limited Liability Company, Appellant,
v.
Perrin L. BLANK, D.D.S., Appellee.
Nos. 4D06-4308, 4D07-1620, 4D07-2927.
District Court of Appeal of Florida, Fourth District.
October 1, 2008.
*710 Jane Kreusler-Walsh of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, and Neil J. Berman of Berman, Rennert, Vogel & Mandler, P.A., Miami, for appellant.
Gerald F. Richman, Jill G. Weiss and Michael J. Napoleone of Richman Greer, P.A., West Palm Beach, for appellee.

On Motions for Rehearing and Rehearing En Banc
MAY, J.
Both parties have moved for rehearing and rehearing en banc. We deny all motions, but withdraw our original opinion and substitute the following opinion in its place.
Damages and attorney's fees are challenged in this appeal. The landlord appeals an adverse damage judgment and subsequently entered attorney's fees and cost judgments. These appeals were initially consolidated for purposes of the record only; we now sua sponte consolidate them for purposes of this opinion. The landlord argues that the trial court erred in its determination of damages for an admitted breach of a lease agreement and in its award of attorney's fees. We agree that the court erred in the award of attorney's fees, but affirm the damages judgment. We therefore affirm in part and reverse in part.
*711 In 1982 the tenant purchased an existing dentistry practice, acquiring the lease, equipment, and patient records at Northwood Medical Center. In 1989 the tenant entered into a five-year lease, which was renewed three times. The last lease was scheduled to expire in June 2009.
In October and November 2004 the tenant received two estoppel letters from a prospective new landlord that ultimately purchased the property in January 2005. The new landlord received an assignment of the tenant's lease. However, the tenant learned that the new landlord might demolish the building so he began looking for another location.
In February 2005 the tenant located a nearby property and requested that the landlord release him from his current lease with the understanding that the parties would negotiate damages at a later time. The landlord refused. The new property was leased to someone else.
In a June 2005 letter, the landlord advised its tenants they would be evicted because the landlord planned to demolish the building. The letter advised that the utilities would be terminated, and all tenants, employees, and invitees would be barred from the premises. This letter provided the tenant with less than six months to relocate. The tenant found another property and entered into a ten-year lease. The new location was larger, but the base rent was less than the first alternative location the tenant had found.
In August 2005 the tenant filed a breach of contract action against the landlord, seeking temporary injunctive relief, damages, costs and attorney's fees. The complaint requested compensatory, consequential, incidental, and special damages, including "lost profits; injury to business; loss of good will; lost time; lost earnings; lost earning capacity; lost lease value; relocation costs and expenses (including new office plan, design and build out; cost of non-movable equipment and fixtures; moving expenses of movable equipment and computers; new cabinetry; new telephone and speaker systems; new advertising/promotion/signage/stationary; rent differentials); water, electric and other utility expenses; higher premiums for new insurance; borrowing/financing costs and expenses; tax liabilities; consultant and broker fees; and attorneys' fees."
The parties stipulated that the tenant could remain until July 2006, resolving the claim for injunctive relief. That stipulation was extended by court order until October 2006. The landlord admitted liability, thereby limiting the trial to damages.
The Lease between Landlord and Tenant provided the following:
All improvements or alterations made by Lessee ... except specified trade fixtures including all medical equipment of Lessee shall, when made, at once be deemed attached to the freehold and shall become the property of the Lessor and shall at the end or other expiration of the Lease be surrendered to Lessor without compensation to the Lessee. However, Lessor shall have the option, to be exercised on the expiration or sooner termination of this Lease, to require Lessee to remove any and all such improvements or alterations at Lessee's complete cost and expense and at no cost or expense to Lessor.
The tenant testified that he thought the lease allowed him to take the medical equipment, but he didn't know if he was able to take the cabinets. The tenant also provided the testimony of an architect, contractor, and others.
The tenant's architect designed and built out the new space. An interior designer provided new furnishings and decor. And, *712 the contractor testified that he outfitted three operatoriesthe same number that existed at the old location. However, because the new space had room for six operatories, plumbing was run to the other three rooms.
The tenant provided a dental equipment specialist, who testified that most of the dental equipment from the old location could not be relocated due to its fragility and the difference in spacing. The age and condition of some components, many of which were built into the cabinetry, contributed to the cost. A telephone and computer specialist testified that it was not feasible to relocate the existing telephone and computer system.
In short, the trial court heard extensive testimony concerning the cost of moving the existing equipment and fixtures compared to the cost of purchasing and installing new equipment. Significantly, the landlord provided no rebuttal testimony, instead strategically choosing to object to the tenant's testimony as irrelevant to the issue of legally cognizable damages.
The trial court found the following as reasonable and necessary damages: moving expenses, architecture fees, new furnishings and décor, the cost of the buildout and outfitting of the three operatories, and the installation of specialized cabinetry. The court also found the replacement of the telephone and computer systems and expenses for stationery, business cards, and other marketing materials were reasonable and necessary. The trial court awarded interest on loans the tenant incurred for expenses caused by the premature termination of the lease. In almost every finding, the trial court noted the lack of rebuttal testimony on the part of the landlord.
The trial court denied the tenant's request for reimbursement of the triple rent imposed as a condition of extending the stipulated time period of the original lease and lost revenue for time spent by the tenant in the move and the lawsuit. The trial court also offset the damages awarded by the salvage value of the tenant's old dental equipment. The total damages amounted to $571,652.

Damages Appeal
The landlord correctly argues that the trial court relied on incorrect measures of damages, out-of-pocket expenses in mitigation of damages and the flexibility theory. Nevertheless, we find the trial court ultimately reached a legally sustainable conclusion under the general theory of damages for breach of a contract.
There are two measures of damages for wrongful eviction resulting from the breach of a lease agreement.
In a claim for wrongful eviction, a tenant may recover general damages consisting of the difference between the market value of the leasehold and the rent payable, as well as lost profits that can be determined with a reasonable degree of certainty. In addition, a tenant may be able to recover damages "for losses that are the natural, direct, and necessary consequences of the breach when they are capable of being estimated by reliable data, and are such as should reasonably have been contemplated by the parties."
Rost v. Bowling, 861 So.2d 1246, 1247-48 (Fla. 2d DCA 2003) (citations omitted). See also Moses v. Autuono, 56 Fla. 499, 47 So. 925, 926 (1908).
Here, the tenant chose not to close down his successful dental practice because of the eviction, but worked diligently to continue it. That practice reaped an annual profit in excess of $375,000. As the trial court noted, had the tenant suffered lost profits for the remaining period of the lease, he would have incurred damages in *713 excess of $1,000,000. The tenant, however, chose to avert the loss of profits by recreating a location to continue his practice.
The only way the tenant could have been compensated for the damages caused by the landlord's admitted breachthe use of an improved premises for the remaining period of the leasewas for the trial court to consider the evidence as to improvements, the use of which was lost for the unexpired term. Young v. Cobbs, 83 So.2d 417, 419 (Fla.1955). And, because the property was leased for a special purpose a dental practicethe tenant was entitled to "his actual and necessary expenses incurred in preparing" to continue his dental practice. Young v. Cobbs, 110 So.2d 651, 652 (Fla.1959).
The tenant produced evidence that it could not move the improvements from the existing location to the new property thereby incurring expenses in replicating his dental practice. The trial court found these losses supported by reliable evidence. Those findings were supported by competent, substantial evidence, which we will not disturb. See Oceanic Int'l Corp. v. Lantana Boatyard, 402 So.2d 507, 511 (Fla. 4th DCA 1981).
The resulting judgment in this case can be attributed not only to the competent, substantial evidence provided by the tenant, but also to the landlord's complete failure to either discredit that evidence or provide rebuttal evidence. It provided no evidence to suggest that the tenant's antiquated equipment could be relocated or what the cost would be to do so. The landlord provided no alternative method to otherwise calculate the value of the newly renovated location or reduce the total cost to some form of amortization over the remaining period of the lease. This failure on the part of the landlord did not go unnoticed as the trial court repeatedly commented on it throughout the judgment.
We are fully cognizant that, more often than not, the measure of damages for wrongful eviction will be the difference between the fair market value of the lease and the tenant's rent expense plus lost profits. We are also fully aware that the alternative measure of damages employed in this case is supported by Florida law.
This was a thriving dental practice, profiting in excess of $375,000 annually. The tenant provided competent substantial evidence to support its claim for the natural, direct, and consequential damages suffered as a result of the landlord's breach. The landlord failed to contradict that evidence. In this unique set of circumstances we find no error in the court's damages judgment. When the landlord placed all of its defense eggs in a basket void of rebuttal evidence and relied solely on disputing the measure of damages chosen by the tenant, it left the court no option but the resulting judgment.
The question of whether the cost to improve the new property was reasonably within the contemplation of the landlord before it breached the lease is answered by the principle applied in Natural Kitchen, Inc. v. American Transworld Corp., 449 So.2d 855 (Fla. 2nd DCA 1984): The parties need not have contemplated the precise injuries which occurred, as long as they could have reasonably been expected to flow from the breach. Id. at 860.
All that is necessary, in order to charge the defendant with a particular loss, is that it is one that ordinarily follows the breach of such a contract in the usual course of events, or that reasonable men in the position of the parties would have foreseen as a probable result of breach. It is not necessary that the parties should have given the matter a moment's *714 thought or should have expressed themselves on the subject.
Id. (quoting 5 Arthur Linton Corbin, Corbin on Contracts § 1010, at 79 (1964)).
The evidence also supports that the loss was reasonably contemplated by the parties. The tenant is a dentist operating a practice in a prime medical location, appropriately outfitted for decades. It is reasonable for the landlord to expect that the tenant would need to either move his existing equipment or outfit a new location with new equipment.
The trial court's inappropriate use of the terms "out-of-pocket" expenses and "flexibility theory" might have confused the issue, but the trial court properly awarded the expenses as general and special damages arising from the landlord's admitted breach. The damages were a foreseeable, direct, natural, and proximate result of the landlord's breach.[1] For this reason, we affirm the damages award.

Attorney's Fees Appeal
In the second appeal, the landlord argues that the trial court erred in awarding attorney's fees to the tenant because the lease agreement did not provide for such an award. We agree.
The Lease provided: "Lessee agrees to pay all actual legal fees and disbursement and all other fees incurred by Lessee in connection with any of Lessor's remedies...." This provision appears in a section of the Lease for the lessor's remedies in case of "LESSEE'S DEFAULT."
In their respective pleadings, both parties requested attorney's fees, pursuant to the lease agreement. The Pretrial Stipulation provided that the parties "expressly agreed that the issue of the amount of attorneys fees and costs to which plaintiff whether as an element of damages caused by the breach of the lease or as to the prevailing party will be tried and determined after the trial...." In its final judgment, the trial court reserved jurisdiction "to determine entitlement and amount of attorney's fees and costs as appropriate."
Subsequent to entry of the damages judgment, the tenant filed a motion for attorney's fees and costs, which was subsequently amended, arguing entitlement under the lease agreement and section 57.105(7), Florida Statutes (2006) (allowing reciprocal application of a contract provision providing for a fee award to a party "required to take action to enforce the contract"). At the fee hearing, the landlord argued that neither party was entitled to fees because there is no provision for them under the lease. The tenant responded that the clause as written did not make sense because it provides only for the lessee to pay its own expenses "in connection with any of lessor's remedies." Nevertheless, that is precisely what the lease provides.
In a supplemental memorandum filed subsequent to the hearing, the tenant argued that the landlord had either waived or was equitably estopped from arguing that the lease does not provide for fees because the issue had not been previously raised. The court found that the tenant had "demonstrated an entitlement to fees pursuant to Paragraph 27 of the Lease, F.S. § 57.105(7) and the evidence presented to this Court including Defendant's Answer and the Pretrial Stipulation."
*715 On appeal, the landlord's argument is simple. The lease does not provide for an award of fees to the tenant in a successful breach of contract action by the tenant. It only provides for the tenant to pay its own fees if the landlord seeks a remedy under the lease. The tenant responds that the Pretrial Stipulation and the request for fees in the landlord's Answer created a waiver or equitably estopped the landlord from contesting the tenant's motion for fees and costs.
We agree with the landlord that the plain language of the lease does not provide for an award of fees to the tenant in this case. Thus, unless the landlord waived its right to contest the tenant's request for fees or is equitably estopped from doing so, the fee award must be reversed.
The question of waiver is an issue of fact, for which a trial judge's finding will be reversed "only if there is no competent, substantial evidence to support" it. Hill v. Ray Carter Auto Sales, Inc., 745 So.2d 1136, 1138 (Fla. 1st DCA 1999); see Bolin v. State, 793 So.2d 894, 897 (Fla. 2001). Waiver is "`the intentional relinquishment of a known right.'" Anthony v. Gary J. Rotella & Assocs., P.A., 906 So.2d 1205, 1208 (Fla. 4th DCA 2005) (quoting Fireman's Fund Ins. Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967)). For the landlord to waive this "right," it must know it had one. "Absent knowledge, a waiver will not arise." Id.
There is no evidence to indicate that the landlord knew that the confusingly-worded fees provision in the lease entitled no one to fees in this case. To the contrary, the landlord apparently thought it was entitled to fees under the lease because it relied on the same provision in its Answer. Because there is no evidence to support an intentional relinquishment of a known right by the landlord, the tenant's waiver argument fails.
To establish an estoppel, the tenant must establish, by clear and convincing evidence, (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance upon that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance. Sun Cruz Casinos, L.L.C. v. City of Hollywood, 844 So.2d 681, 684-85 (Fla. 4th DCA 2003).
Here, the evidence suggests that both parties misinterpreted the language of the attorney's fees provision in the lease. There is no evidence, much less clear and convincing evidence, that the landlord misrepresented a material fact upon which the tenant relied to its detriment. For this reason, equitable estoppel does not provide a basis upon which to award fees.
Because the lease agreement did not provide for an award of fees and the evidence does not support that the landlord either waived or is equitably estopped from arguing against such an award, we reverse the award for attorney's fees.
Affirmed in part and Reversed in part.
SHAHOOD, C.J., and POLEN J., concur.
NOTES
[1] Here, again, had the landlord endeavored to set forth a more modest estimate of the buildout expenses, the trial court would have had a basis for rejecting some of the actual expenditures that the landlord now contends were not foreseeable. By contending that none of the build-out expenses were foreseeable, the landlord limited the scope of the review available at trial and on appeal.