[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10536
_____

D.C. Docket No. 8:15-cv-02690-SCB-AAS

SELSO PALMA ULLOA,
ORLIN NAHUM SANCHEZ,
MANUEL EDGARDO MEJIA,
JOSE GUADALUPE,
NATAN JOEL ORELLANA,
JULIO CESAR GUTIERREZ,
JORGE HUMBERTO VASQUEZ,
JORGE ALBERTO DOMINGUEZ MADRID,
FAREN OBED URRUTIN RAMIREZ,
ERICK JOEL ULLOA AMAYA,
MARVIN ALEXANDER BUEZO CABALLERO,
BAYRON ALBERTO CHAVEZ MUNGUIA,
CRISTIAN EDGARDO TINOCO BUESO,
WALTER BRIZUELA,
DILIO CRUZ VASQUEZ,
OSMON HERALDO GOMEZ,
ELDER DOMINGO MADRID,
WILMAN NOEL MARTINEZ LARA,
RENE ARDON VILLEDA,
ALEX DANIEL ULLOA AMAYA,
RENSO RENERIE CASTILLO BLANCO,
DEBLIN OVIDIO LOPEZ HERNANDEZ,
WILBER LISANDRO BENITEZ PORTILLO,
JULIO CESAR SALMERON,
OSCAR RENATO ANARIBA ULLOA,
MARVIN ALEXANDER CASTRO ALVAREZ,
HENRY BLADIMIR ACOSTA RUIZ,

RUFINO QUINTERO AMAYA,
JOSE MELVIN VASQUEZ DOMINGUEZ,
EDVIN PINEDA TINOCO,
JONATHAN FELIPE AMAYA,
CELSO LOIRA RODRIGUEZ,
RUBEN CASTRO CASTRO,
EVELIO HERNANDEZ AGUILAR,
OSCAR AMILCAR GUERRA,
ALEJANDRO CRUZ PONCE,
NERY JOEL CANO,
MARCO TULIO SANTOS,
NOEL ANTONIO DIAS,
OSCAR DANILO LOPEZ VASQUEZ,
GILBERTO MATIAS NOLASCO LOPEZ,
MARVIN NOE ALVARADO,
MANUEL DE JESUS HERNANDEZ AMAYA,
MERLYN RAUL RODRIGUEZ AMAYA,
EDUARDO ANTONIO CANO,
ORLIN GERARDO CASTRO DIAZ,
JAIME ENRIQUE DOMINGUEZ MADRIOL,
SANTIAGO ARNALDO ORELLANA,
DIONICIO MARCIA CHAVER,
ALEX RENE MEMBRENO REYES,
GILBERTO GARCIA ZELAYA,
GILBERTO MATIAS NOLASCO LOPEZ,
JOSE LUCIO ALVARADO DUBON,
JULIO CEASAR RAMOS,
OSMAN LEONEL GAMEZ RAMOS,

                                        Plaintiffs - Appellants,

versus

FANCY FARMS, INC.,

                                        Defendant - Appellee.

2

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 7, 2019)

Before MARCUS and DUBINA, Circuit Judges and GOLDBERG,[*] Judge.

PER CURIAM:

This is an appeal from the district court's order granting summary judgment

to defendant/appellee, Fancy Farms, Inc. ("Fancy Farms"), on claims for violation

of the Fair Labor Standards Act ("FLSA") and breach of employment contract

brought by plaintiffs/appellants, guest foreign workers.  The plaintiffs/appellants

also appeal the district court's judgment entered after a bench trial.  After having

the benefit of oral argument, reviewing the record, and reading the parties' briefs,

we affirm in part, vacate in part, and remand for further proceedings consistent

with this opinion.

## I.  BACKGROUND

A.  *Facts*

Fancy Farms is a family-owned strawberry farm located in Hillsborough

County, Florida.  The farm produces strawberries for commercial sale.  The

_____

[*] Honorable Richard W. Goldberg, Judge for the United States Court of International
Trade, sitting by designation.

strawberries are harvested by hand, and Fancy Farms needed seasonal workers for the 2013-2014 season to help with the harvest.  Fancy Farms decided to hire foreign workers under the H-2A temporary agricultural guest worker program that was established by the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359.  The program permits agricultural employers to hire nonimmigrant aliens if the employer certifies to the Department of Labor ("DOL") that there is not a sufficient number of domestic workers who are "able, willing, and qualified" to perform the work needed and that the employment of guest workers "will not adversely affect the wages and working conditions of workers in the United States similarly employed."  8 U.S.C. § 1188(a)(1).

To assist with hiring seasonal workers, Carl Grooms ("Grooms"), the owner of Fancy Farms, contacted a recruiting firm, All Nations Staffing.  In May 2013, Grooms interviewed Nestor Molina ("Molina"), a principal of All Nations Staffing, and explained that Fancy Farms needed extra workers to assist with the strawberry harvest.  Grooms told Molina that he wanted to hire workers from Guatemala because of positive past experiences with these workers.  Grooms never directed Molina to charge recruitment fees and specifically told Molina that the recruitment and hiring had to be "done correctly" and "by the book."  (R. Doc. 48 at 217–19.) After a series of meetings, Fancy Farms entered into a contract with Molina and his

4

business partner, Patrick Burns ("Burns"), by which they would become temporary employees of Fancy Farms in charge of recruiting foreign workers. (R. Doc. 74 at 2.) Fancy Farms began paying Molina and Burns as full-time employees on June 20, 2013. (*Id.* at 2–3.)

In fact, Molina had begun recruiting Honduran H-2A workers months before Fancy Farms hired him. Unbeknownst to Fancy Farms, Molina and his associate informed interested workers that they would have to pay a fee as a condition of employment. (*Id*. at 5.) The fees ranged between $3,000 and $4,000, and Molina told the workers that the fees would be refunded at the end of the harvest season. Most of the workers paid the recruitment fee prior to the date that Fancy Farms entered into contracts with Molina and Burns, but at least 11 workers paid Molina or his associate after the contract date. (R. Doc. 95 at 4–6.)

In June 2013, Fancy Farms filed a labor certification application with the DOL seeking the admission of H-2A workers for the 2013–2014 strawberry season. The first application sought to admit 100 workers for the period from September 1, 2013, to April 15, 2014, and a second application sought admission of 75 additional workers for December 9, 2013, through April 15, 2014. (R. Defendant's Exh. 51–1 at 364 & 73.) In both applications, Fancy Farms certified that it would contractually forbid any foreign labor recruiter that it employed from

5

seeking or receiving payments from potential employees.  (*Id.* at 43, 80.)  Fancy

Farms also submitted the required DOL clearance orders, in which it agreed to

abide by the regulations that forbid any foreign labor recruiter whom the employer

engages from seeking or receiving payments from prospective employees.  *See* 20

C.F.R. § 655.135 (assurances and obligations of H-2A employers); § 655.135 (j)

("The employer and its agents have not sought or received payment of any kind

from any employee . . . for any activity related to obtaining H-2A labor

certification, including payment of . . . recruitment costs.")); § 653.501

(requirements for processing clearance orders).  Along with the labor certification

application, these clearance orders served as the employment contracts between the

foreign workers and Fancy Farms.  *See Arriaga v. Fla. Pac. Farms, L.L.C.*, 305

F.3d 1228, 1233 n.5 (11th Cir. 2002); 20 C.F.R. § 655.122(q) ("In the absence of a

separate, written work contract entered into between the employer and the worker,

the required terms of the job order and the certified Application for Temporary

Employment Certification will be the work contract.").

Shortly before the workers arrived, Fancy Farms learned that Molina had

recruited workers from Honduras, not Guatemala, as Grooms preferred.  These

workers began to arrive in October, sooner than Grooms expected.  After the first

group arrived, Molina provided Fancy Farms with paperwork for the workers'

6

travel expenses, and Fancy Farms reimbursed the workers for these expenses. At that time, no worker informed Grooms that Molina had charged them a recruitment fee to secure employment with Fancy Farms. Grooms testified that Fancy Farms first learned of Molina's charge of the recruitment fees in March 2014, when it received a letter from an attorney representing the foreign workers. Grooms stated that the letter claimed that Fancy Farms was responsible for reimbursing these recruitment fee payments. (R. Doc. 48 at 198–201.) Grooms met with the foreign workers and received inconsistent answers to his questions regarding their payment of recruitment fees. Molina denied any allegation that he requested or received recruitment fees from these workers.

The next time Fancy Farms paid the workers, it distributed a statement, translated into English, that read:

Notice Regarding Placement Fees

No person is authorized on behalf of Fancy Farms to have required that you pay a monetary fee of any amount to any person who may have assisted you in obtaining your visa to come to the United States for temporary work in agriculture. Such placement fees are prohibited by applicable law.

The enclosed earnings for your work at Fancy Farms are yours to keep, and no person is authorized on behalf of Fancy Farms to require that you ever provide them any portion of your weekly earnings. If anyone requests that you pay to them any of your earnings from your employment on Fancy Farms, you should simply tell them "No," and report such inappropriate demands to your Farm Manager. Fancy

7

Farms will promptly turn over any such reports to local law enforcement.

(R. Doc. 74 at 6; Defendant's Exh. 51–1 at 91.)  Fancy Farms did not reimburse the foreign workers for the recruitment payments.

B.  *Procedural History*

Fifty-six H-2A workers ("the plaintiffs") filed suit against Fancy Farms alleging two claims: (1) Fancy Farms failed to reimburse their recruitment fees, which resulted in their wages dropping below the minimum wage guaranteed by the FLSA; and (2) Fancy Farms breached the plaintiffs' employment contracts by failing to include a provision barring recruitment fees in its agreement with All Nations Staffing, in violation of a federal regulation.  The plaintiffs sought to recover damages for the amount the recruitment fees affected their minimum wage, their actual damages resulting from the breach, liquidated damages, costs and attorney's fees.

Fancy Farms moved for summary judgment on both claims, and the plaintiffs sought summary judgment on the breach of contract claim only.  The district court granted summary judgment to Fancy Farms on the plaintiffs' FLSA claims because it found that the plaintiffs failed to present evidence that Fancy Farms authorized Molina to collect the recruitment fees.  As to the breach of contract claim, the district court granted partial summary judgment to Fancy

8

Farms.  The district court found that Fancy Farms did not breach its contract with the plaintiffs who paid recruitment fees before June 20, 2013, the date on which Fancy Farms entered employment contracts with Molina and Burns.  In so finding, the district court's order disposed of 28 plaintiffs' breach of contract claims.

Pursuant to the district court's order on summary judgment, 26 plaintiffs retained active breach of contract claims, and the parties authorized the district court to resolve these remaining claims on the record without a jury trial.  The plaintiffs conceded that 15 of the remaining claims failed due to lack of evidence regarding the date or amount of the recruitment fee they paid Molina or his agent. As to the remaining 11 plaintiffs, the district court made findings of fact and conclusions of law and determined that each worker had paid a recruitment fee at the direction of Molina or his agent after June 20, 2013, that Molina or his agent received the fee, and that Molina or his agent required payment of the fee solely for the opportunity to gain employment.  The district court opined that Fancy Farms' failure to prohibit contractually Molina and his agent from collecting the fee could support a cause of action for breach of contract; however, it concluded that the claims still failed because the plaintiffs did not proffer enough evidence to demonstrate proximate causation between Fancy Farms' breach and the damages

9

the plaintiffs suffered.  Thus, the district court dismissed the remaining claims and entered judgment for Fancy Farms.  The plaintiffs then perfected this appeal.

## II.  ISSUES

1.  Did the district court err in granting summary judgment to Fancy Farms on the plaintiffs' FLSA claims?

2.  Did the district court err in granting judgment to Fancy Farms on the plaintiffs' breach of contract claims?

## III.  STANDARD OF REVIEW

This court reviews de novo a district court's grant of summary judgment. *Holloman v. Mail-Well Corp*., 443 F.3d 832, 836 (11th Cir. 2006).  "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party."  *Id.* at 836–37.

This court reviews "factual findings made by a district court after a bench trial for clear error, which is a highly deferential standard of review," and reviews its conclusions of law de novo.  *Renteria-Marin v. Ag-Mart Produce, Inc.*, 537 F.3d 1321, 1324 (11th Cir. 2008).

## IV.  ANALYSIS

A.  *The FLSA Claims*

10

The plaintiffs challenge the district court's grant of summary judgment to Fancy Farms on their FLSA claims. They contend that the recruitment fees paid at the direction of Molina amounted to an impermissible deduction that lowered their pay below the FLSA minimum wage. They claim that Fancy Farms is obligated to reimburse the recruitment fees to avoid FLSA liability because its employee, Molina, was acting with apparent or actual authority when he wrongfully collected recruitment fees. They also argue that because Molina and Burns were Fancy Farms' employees, Fancy Farms had imputed knowledge of the wrongfully obtained recruitment fees. The district court properly applied the pertinent law of agency and our circuit precedent to the facts presented by the plaintiffs and found that the plaintiffs failed to present evidence that Fancy Farms authorized Molina to collect these fees.

As our circuit noted in *Arriaga*, when the court applies agency principles to federal statutes, "the Restatement (Second) of Agency . . . is a useful beginning point for a discussion of general agency principles." 305 F.3d at 1245 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 755, 118 S. Ct. 2257, 2266 (1998)). The Restatement provides that apparent authority is "created as to a third person by written or spoken words of any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have

11

the act done on his behalf by the person purporting to act for him." Restatement

(Second) of Agency § 27 (1958). Under apparent authority, the manifestation of

the principal is to the third person. *Id*. § 27 cmt. a.

To satisfy this requirement, the plaintiffs must produce some evidence that

Fancy Farms conveyed information to them which caused them to believe that

Fancy Farms authorized the fees or consented to the collection of the fees.

Furthermore, to demonstrate apparent authority, the plaintiffs must show that

Fancy Farms communicated to them its approval of the fees by some

manifestations, written or spoken words, or conduct. *See Prod. Promotions, Inc. v.*

*Cousteau*, 495 F.2d 483, 493 (5th Cir. 1974) (noting that "[b]oth types of authority

depend for their creation on some manifestations, written or spoken words or

conduct, by the principal, communicated either to the agent (actual authority) or to

the third party (apparent authority)."), *overruled on other grounds*.[1]

The district court made several pertinent undisputed findings of fact: (1)

Fancy Farms did not authorize Molina or Burns to request recruitment fees of

prospective H-2A workers, or to accept recruitment payments from prospective

workers; (2) Grooms explicitly directed Molina to conduct his recruitment "above

---

[1] In *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions handed down by the Fifth Circuit prior to September 30, 1981.

12

board," and warned Molina that if he did not, Grooms would make sure he did not perform this duty in Florida again; (3) at no time while reimbursing pre-employment expenses did any of the H-2A workers report to Fancy Farms that they had paid recruitment fees to Molina or Burns; and (4) when it received notification about the recruitment fees, Fancy Farms communicated to the workers, in writing, that no person had its authority to request that they pay recruitment fees for the opportunity to work at the strawberry farm. Applying these facts to agency principles, the district court found that Molina and Burns lacked actual authority to collect fees on Fancy Farm's behalf because Fancy Farms never expressly authorized them to charge recruitment fees, and because Grooms specifically stated that he nor anyone else at Fancy Farms instructed Molina or his agent to charge such fees.

The plaintiffs cannot dispute these factual findings and fail to identify any acts by Fancy Farms, the principal, that would have reasonably caused them to believe that Fancy Farms consented to Molina charging and collecting recruitment fees. Without a manifestation by Fancy Farms to this effect, the plaintiffs cannot demonstrate the creation of apparent authority. Therefore, because the undisputed facts establish that no words or conduct on the part of Fancy Farms could reasonably have led the plaintiffs to believe that Fancy Farms authorized Molina or

13

anyone at All Nations Staffing to demand and collect recruitment fees on its behalf, we conclude that there is no evidence to support the plaintiffs' claim of actual or apparent authority. *See Arriaga*, 305 F.3d at 1245 (addressing a similar claim, looking to the common law of agency, and holding that those who collected the fees lacked actual or apparent authority to do so because there were "no words or conduct of the [employers] which, reasonably interpreted, could have caused the [plaintiffs] to believe the [employers] consented to have the recruitment fees demanded on their behalf".). Moreover, we reject as meritless any imputed knowledge argument asserted by the plaintiffs. *See Ramos-Barrientos v. Bland*, 661 F.3d 587, 602 (11th Cir. 2011) (squarely rejecting an imputed knowledge argument "because the collection of these fees was outside the scope of authority granted by [the employer].").

The district court also properly found that the plaintiffs' claims failed under principles of *respondeat superior* because that doctrine applies to tortious or criminal acts of an employee, not contract actions. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (noting that under the doctrine of *respondeat superior*, an employer cannot be held liable for the tortious or criminal acts of an employee except in certain limited situations). Moreover, under Florida law, "an action falls within the scope of employment if the conduct: (1) is of the

14

kind the employee was employed to perform; (2) occurred within the time and space limits of the employee's employment; and (3) was activated at least in part by a purpose to serve the employment." *Id.* (citing *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1150 (11th Cir. 1994)). Hence, the question the plaintiffs must answer is whether, under this legal standard and in view of the facts presented, Molina was acting within the scope of his employment when he wrongfully collected the recruitment fees. The plaintiffs cannot answer that question in the affirmative because much of the alleged conduct occurred outside the time and space limits of Molina's employment, and the collection of fees exceeded the scope of Molina's employment with Fancy Farms. Accordingly, for all of the above reasons, we affirm the district court's grant of summary judgment to Fancy Farms on the plaintiffs' FLSA claims.

### B. The Contract Claims

The plaintiffs contend that the district court erred in granting judgment to Fancy Farms on their breach of contract claims because the district court erred in its causation analysis as to the post-June 20, 2013 claims. We agree. Under Florida law, there are three elements to a breach of contract claim: (1) the existence of a contract; (2) a material breach; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). This

15

requirement means that the "damages for breach of contract 'must arise naturally from the breach, or have been in the contemplation of both parties at the time they made the contract, as the probable result of a breach.'" *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1531 n.11 (11th Cir. 1985) (quoting *Hobbley v. Sears, Roebuck & Co.*, 450 So. 2d 332, 333 (Fla. Dist. Ct. App. 1984)). The district court incorrectly found that the plaintiffs did not show by a preponderance of the evidence that their payments were "proximately caused" by Fancy Farms' failure to restrict Molina and his agent from seeking recruitment fees.

The plaintiffs argue on appeal that their damages, the payment of the unlawful recruitment fees, "arise naturally" from the breach because that is the exact harm that the regulation requiring the contractual provision is intended to prevent. *See id.* They also argue that these damages were contemplated by Fancy Farms at the time the contract was made because it was reasonably foreseeable that this kind of harm would result from a breach. *See Nat. Kitchen, Inc. v. Am. Transworld Corp.*, 449 So. 2d 855, 860 (Fla. Dist. Ct. App. 1984) (following the rule that "[a]s for foreseeability, the parties need not have contemplated the precise injuries which occurred so long as the actual consequences could have reasonably been expected to flow from the breach.").

16

Contrary to the district court's findings, we conclude that the plaintiffs have put forth some evidence that their damages arose naturally from or were the reasonably foreseeable result of Fancy Farms' breach of their contracts.  First, Grooms stated in his deposition that he knew that "a big ploy for a lot of recruitment of H-2As, is to extort money from the workers," in response to questioning about whether he specifically forbade Molina and his agent from seeking recruitment fees.  (R. Doc. 48 at 216–220.)  Grooms also stated that he had heard of similar recruitment situations in the news and knew that the charging of recruitment fees to H-2A foreign workers was a problem.  (R. *Id.*)  In addition, the plaintiffs cite handwritten notes made by Grooms while checking Molina's references that indicate he learned that some workers "had to pay extra to come to [the] US."  (R. Doc. 48, Plaintiff Exh. 1.)  We agree with plaintiffs that the statements and note indicate that Fancy Farms may have been aware that this type of injury was reasonably foreseeable from the use of recruiting services.

Furthermore, when courts interpret a mandatory covenant in a contract that implements federal regulatory requirements, like the provision at issue here, they look to "the purpose and policy behind the regulatory requirements behind those provisions." *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1105 (11th Cir. 2014).  The DOL has expressly stated that the payment of recruitment fees is

17

"precisely [the] type of activity that the employer assurances are meant to prevent." Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement, 73 Fed. Reg. 77110, 77160 (Dec. 18, 2008).  Hence, we conclude that an employer's failure to comply with a regulation that requires them to ban recruitment fees from any recruiter the employer hires could naturally lead to the foreseeable payment of recruitment fees by the workers.  It is unquestioned that recruitment fees are barred under the regulations, and Molina's conduct is expressly prohibited.  The contracts Fancy Farms made with All Nations Staffing, Molina, and Burns should have barred any recruitment fees after June 20, 2013, but they did not.  Thus, because of this mandatory regulatory provision and Grooms' statements and handwritten note, we vacate the district court's judgment entered in favor of Fancy Farms on the breach of contract claims as it relates to the dismissal of all claims for recruitment fees paid after June 20, 2013.

However, we affirm the district court's grant of summary judgment to Fancy Farms on the contract claims by plaintiffs who paid recruitment fees before June 20, 2013.  There is no dispute that the parties entered a written contract on June 20, 2013.  The plaintiffs have presented no evidence indicating that Fancy Farms hired Molina or Burns prior to this date.  Although in a clearance order dated June 14,

18

2013, Molina did represent that he was an employee of Fancy Farms, assuming *arguendo* that Fancy Farms had "engaged" his services at that time, it would not have impacted any of the plaintiffs' claims because all fees were paid either before the end of May 2013 or between July 2013 and February 2014.  (R. Doc. 74 at 5.) *See* 20 C.F.R. § 655.135(k) (providing that an employer must contractually forbid any recruiter or agent whom the employer "engages, either directly or indirectly," in international recruitment of H-2A workers to seek or receive payments or other compensation from prospective employees).  It is reasonable to conclude that had Fancy Farms contractually barred Molina and Burns from collecting fees as soon as it engaged them, whether that was on the date they executed the employment contract or an earlier date, the recruiters might have ceased collecting fees on that date.  Hence, in the absence of any significantly probative evidence that Fancy Farms engaged Molina and Burns before June 20, 2013, the district court properly granted summary judgment to Fancy Farms on these pre-June 20, 2013, breach of contract claims.

## V. CONCLUSION

The district court properly granted summary judgment to Fancy Farms on the plaintiffs' FLSA claims and properly granted partial summary judgment to Fancy Farms on the plaintiffs' contract claims that arose before June 20, 2013.

However, the district court erred in entering judgment in favor of Fancy Farms on the plaintiffs' post-June 20, 2013, contract claims. The plaintiffs presented sufficient evidence on the causation element to vacate that part of the judgment entered after a bench trial. Accordingly, we affirm in part, vacate in part, and remand to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.