654 So.2d 659 (1995)
Mary L. MIZELL, Appellant,
v.
Harold D. DEAL and Judith A. Deal, Appellees.
No. 94-1646.
District Court of Appeal of Florida, Fifth District.
May 12, 1995.
*661 Darryl W. Johnston, of Johnston & Sasser, P.A., Brooksville, for appellant.
Alan W. Underwood, of High, Underwood & Eppley, P.A., Brooksville, for appellees.
GRIFFIN, Judge.
Mary L. Mizell ["Mizell"] appeals an adverse judgment in her action to enforce a restrictive covenant. We reverse.
Mizell was the developer of a small community of twenty-acre mini-farms located in Hernando County, Florida. Harold and Judy Deal ["the Deals"] purchased one of the mini-farms from Mizell on August 13, 1988. The Deals placed a singlewide mobile home on their land and lived there for three and one-half years, from August of 1989 until April of 1993. In April 1993, they replaced the singlewide with a doublewide mobile home. Thereafter, Mizell filed a one-count complaint against the Deals to enforce the following restrictive covenant:
DWELLING REQUIREMENTS: The ground floor of dwelling structures, including garage or carport as square footage of home, shall be not less than 2,000 square feet for one-story dwellings, nor less than 1,200 square feet for a dwelling of more than one story. For purposes of determining the square footage of the ground floor of a dwelling unit, the first habitable floor of a unit is the ground floor.
Manufactured houses, mobile homes will be permitted as dwelling units for a maximum period of two (2) years from date mobile home is moved onto property. Buildings supported by a stilt structure must have the first floor enclosed so the support structure will be hidden from view.
In their answer, the Deals raised as affirmative defenses that there were no restrictions on the property, that Mizell was estopped to object to the locating of mobile homes on the property, that the deed restrictions were ambiguous and that the original restrictions had been abandoned. The lower court's judgment *662 in favor of the Deals validated all of these defenses.
The evidence at trial showed that the land on which the development was located was originally owned by Michael's Place, Inc. With the permission of Michael's Place, Inc., Mizell obtained the county's approval to subdivide the property into sixteen 20 acre mini-farms. Prior to her acquisition of the tract, Mizell then undertook to market the property with the help of a realty company named Terra Research Corporation. The Deals signed an agreement to purchase one of the mini-farms from Mizell on July 9, 1988, subject to Mizell's acquisition of the land. Mizell closed on the tract on July 26th.
Mizell stipulated that she executed a warranty deed which transferred the parent tract to Keith Fredericks, Esquire ["Fredericks"], as trustee, on August 1, 1988, and that she executed the deed restrictions the following day. Mizell testified, however, that she executed the warranty deed to Fredericks at the offices of Terra Research, Inc., with instructions that the deed not be delivered to Fredericks until after the deed restrictions were recorded. None of this evidence was controverted by the Deals.[1] It is undisputed that the deed restrictions were recorded prior to the recording of the trust deed.
Mizell testified that the principal purpose of the deed restrictions was "to prohibit the permanent placement of trailers and also to prohibit hog farms and chicken farms." The restriction against mobile homes was drafted to enable the buyer to live on the property in a mobile home for a period of two years while his or her house was being built.
The Deals contended the restrictions were invalid because they were imposed when Mizell no longer owned the property. They relied solely on the fact that the warranty deed which transferred the parent tract to Fredericks, as trustee, was executed on August 1, 1988, while the deed restrictions were not executed until the following day. The Deals agree that the delivery of the deed, not execution, is the event that transfers title; they rely on the proposition that a deed is presumed delivered on the date it was executed. 19 Fla.Jur.2d, Deeds § 143 at 275.
Even if this presumption were available in a case such as this, it is not sufficient here. Mizell's testimony concerning delivery is discounted by the Deals as "self-serving;" however, her unrebutted direct evidence is sufficient to dissipate the presumption, see Charles W. Ehrhardt, Florida Evidence, § 303.1 at 83-84. There being no evidence that delivery of the deed predated the execution of the deed restrictions, the restrictions are not invalid for this reason.[2]
The second issue is whether the trial court erred in finding that the restriction against mobile homes was unenforceable because of a change in the character of the neighborhood. In order to invalidate a restrictive covenant based on subsequent changes in the character of the neighborhood, the changes "must be such as materially affect the restricted land and frustrate the object of those restrictions." Acopian v. Haley, 387 So.2d 999, 1001 (Fla. 5th DCA 1980), review denied, 392 So.2d 1375 (Fla. 1981). Furthermore, even the changed condition of the neighborhood in which a lot is located will not prevent enforcement of the restriction if the restriction is for the benefit of and is still of substantial value to the dominant lot. Id. We have reviewed the evidence relied on by the Deals and can find no evidence of such a change. The restrictive covenant *663 plainly contemplates that mobile homes can be present on the parcels in the tract, although the duration is limited. It appears clear that the Deals were the only landowners in the community who were in violation of the restrictive covenant as of trial.
Mizell also contends that the trial court erred in finding that the deed restriction was ambiguous because it can be interpreted so as to permit the Deals to put successive mobile homes on their property every two years. While covenants that run with the land must be strictly construed in favor of the free and unrestricted use of real property, Lathan v. Hanover Woods Homeowners Ass'n, Inc., 547 So.2d 319, 321 (Fla. 5th DCA 1989), a restriction which sufficiently evidences the intent of the parties and which is unambiguous will be enforced according to its terms. Sweeney v. Mack, 625 So.2d 15 (Fla. 5th DCA 1993), review denied, 634 So.2d 625 (Fla. 1994); Cottrell v. Miskove, 605 So.2d 572 (Fla. 2d DCA 1992). We find the construction urged by the Deals is both illogical and unreasonable. There is no reason the restriction should not be enforced according to its terms.
Mizell is correct that the trial court erred in finding that she had waived the restriction or was estopped to enforce it because she had somehow acquiesced in the placement of mobile homes on the property by the Deals and other property owners. Waiver is the intentional or voluntary relinquishment of a known right, or conduct which implies the relinquishment of a known right. The elements of waiver are (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right. Taylor v. Kenco Chemical & Mfg. Corp., 465 So.2d 581 (Fla. 1st DCA 1985). In addition, in the context of restrictive covenants, there must be a "long-continued waiver or acquiescence in the violation of a restrictive covenant" and "conscious acquiescence in persistent, obvious and widespread violations for waiver or abandonment to occur." Siering v. Bronson, 564 So.2d 247, 248 (Fla. 5th DCA 1990). The Deals offered no evidence from which the trial court could have concluded that Mizell waived the restrictions beyond the Deals' testimony that they lived in their mobile home without complaint, for a year and a half beyond the time limitations contained in the restrictions. This does not appear to constitute the type of "clear conduct" necessary to constitute a waiver, nor would it constitute the "long continued" "conscious acquiescence in persistent, obvious or widespread violations" necessary to prevent enforcement of the restrictions.
Finally, the evidence cannot support an estoppel. The Deals are unable to establish that they relied to their detriment on any representation by Mizell that mobile homes would be permanently permitted on the property. Further, even if the evidence supports the conclusion that Mizell was silent for a period of time concerning the Deals' alleged breach of the covenants, estoppel based upon silence cannot exist where the parties have equal knowledge of the facts or the same means of ascertaining that knowledge. Pelican Island Property Owners Ass'n v. Murphy, 554 So.2d 1179 (Fla. 2d DCA 1989). The record is clear that the Deals knew about the covenant from the date of their purchase of the lot and, though the fact-finder could accept the Deals' testimony that Mizell indicated by comments she made after the doublewide was installed that she would take no action concerning the mobile home, there is no evidence that the Deals relied on this representation to their detriment.
Accordingly, we reverse and remand with instruction to enter judgment in favor of Mizell.
REVERSED and REMANDED.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] Neither Monroe Tremain, to whom the documents were delivered, nor Keith Fredericks, the trustee, was called to testify at trial.
[2] The presumption in this case was designed to permit proof of the date of delivery where no other means of proof exists. The presumption is of the weakest sort and vanishes in the absence of direct proof of an alternative date of delivery. The burden is then on the party who had relied on the presumption to prove the date of delivery by a preponderance of the evidence, unaided by the presumption. Standing alone, the date of execution of the deed is not probative of the date of delivery of the deed or whether it was conditional. See Speer v. Friedland, 276 So.2d 84 (Fla. 2d DCA 1973); In re Estate of Carpenter, 239 So.2d 506 (Fla. 4th DCA 1970), affirmed in part, remanded in part, 253 So.2d 697 (Fla. 1971); Locke v. Stuart, 113 So.2d 402 (Fla. 1st DCA 1959). Absent any direct proof concerning the date of delivery, the party relying on the presumption is thus unable to carry its burden.