THOMPSON, J.
Sonja Boyd, the former wife, appeals an order enforcing a final judgment of dissolution. Although several contested issues were resolved at the hearing, the former wife appeals only the judgment against her for $29,000. The court found that she had surreptitiously taken a $29,000 collection of ivory figurines, part of the inventory of a pawn shop the parties had owned. We affirm.
The parties were married in 1981 and the petition for dissolution was filed in 2000. A handwritten settlement agreement signed in 1999 and a typed settlement agreement dated June 2000 were filed in August 2000. The agreement provided for the distribution of the parties’ assets and was incorporated into the final judgment. Under the agreement, the former husband was to be sole owner of all merchandise owned by Family Pawn, and, unaware that she had taken the merchandise from the warehouse, he agreed that he already had possession of the property. In November 2001, the former husband moved for contempt and enforcement of the final judgment, alleging that the former wife had taken the merchandise and probably sold it. The former husband testified that the parties’ daughter eventually told him that the former wife had taken the ivory. The former wife admitted taking the ivory, but claimed that she had taken it on impulse because she had no money and needed to make a house payment. Further, she claimed she promptly returned it to the exact place from which she had taken it.
After hearing the testimony of the former husband, the former wife, the maternal grandmother, and the parties’ daughter, the court found that the former wife had been having serious financial problems at the time she broke into the warehouse. The court pointed out that she admitted taking the ivory and had had it in her possession the last time the ivory was seen. There was evidence that the ivory was packed and sent to California. The former husband’s employees discovered the break-in, which had occurred on a Saturday and/or a Sunday, on the following Monday and promptly changed the locks. The former wife claimed to have returned the items to a College Park facility, but the grandmother said they returned the items to a certain Kissimmee facility. More important, the court found, the former wife could not have gotten access to the College Park facility because the locks had been changed and upgraded. The court therefore did not believe she returned the ivory and believed she converted it for her own purposes. The court found that the best and only evidence of the fair market value of the collection was $29,766, and accepted that number.
*698 First, the former wife argues that the final judgment of dissolution settled for all time the distribution of property to the parties and that the doctrine of res judicata barred the former husband’s claim. Res judicata is an affirmative defense, see Scovell v. Delco Oil Co., 798 So.2d 844 (Fla. 5th DCA 2001), and affirmative defenses are waived if they are not pleaded, St. Paul Mercury Insurance Co. v. Coucher, 837 So.2d 483 (Fla. 5th DCA 2002). See also Lee v. City of Jacksonville, 793 So.2d 62 (Fla. 1st DCA 2001) (“Since the function of this court is to review possible error committed by the trial court, absent jurisdictional or fundamental error, a legal argument must be raised initially in the lower court before it can be considered on appeal”). The former wife waived this defense by failing to raise it.
The former wife also claims that the order should be reversed because the court’s finding that the ivory was worth $29,776 was not supported by competent evidence. First, the former wife points out that in the former husband’s financial affidavit he claimed that Family Pawn was worth $20,000, yet he claimed at trial that the ivory alone was worth $29,776. Here, the former wife is comparing apples and oranges if the $20,000 stated in the affidavit pertained to the amount paid for the assets of Family Pawn. The former husband testified that he purchased the items for far less than the fair market value, and the former wife testified that the former husband was a “master negotiator.”
The former wife also points to the somewhat confusing testimony of the former husband, who referred at different points to 352, 354, and, 356 pieces of ivory.[1] Whether the number of pieces taken was 352, 354, or 356, the numbers do not result in $29,776 when multiplied by $48.68, the minimum value the former husband placed on each, piece. The former husband’s counsel had prepared notebooks for the court and opposing counsel and referred to a tab in the notebook which showed that the fair market value of the ivory was $29,766. Both the former wife and her counsel interrupted when the former husband began to take testimony from the daughter about pictures of the collection, and the former wife’s counsel told the court that there was no need to “go through all of that” because the wife’s position was that she put the ivory back where she got it from. This, along with the fact that the notebook apparently set out the former husband’s claim, and along with the wife’s statement that she did not know what she took, apparently lulled the former husband and his counsel into thinking that the exact number of pieces taken was not an issue.
We conclude that the former wife waived her contention as to the sufficiency of the evidence by failing to move for an involuntary dismissal of the former husband’s claim. See Tillman v. Baskin, 260 So.2d 509 (Fla.1972) (motion for involuntary dismissal is the proper method by which a defendant may obtain a verdict in his favor following the presentation of the plaintiffs case); Stone v. Stone, 346 So.2d 1242 (Fla. 2d DCA 1977) (“In the past we have repeatedly reversed awards of attorney’s fees not predicated upon expert evidence as to reasonableness.... However, in view of appellant’s abandonment of any argument as to the reasonableness of the attorney’s fees ... the judgment of the trial court is affirmed”). If the former wife had made the point below that the *699 evidence was insufficient to support a judgment against her, the former husband probably would have been allowed to reopen his case and testify more coherently. We conclude that there was no preserved error in this regard.
The former wife also contends that the trial court fundamentally erred in ordering her to pay for the full value of the ivory because paragraph 46 of the marital settlement agreement provides for a 50-50 division of undisclosed marital assets: “If it is later discovered that either party has possession or control of, or has disposed of by gift or conveyance, an undisclosed beneficial interest in any property owned by the parties ... such party, upon demand, shall transfer ... to the other party ... one-half interest therein, or shall pay the other party a sum equal to one-half the fair market value of such interest ...” There was no “undisclosed beneficial interest” in this case. The assets of Family Pawn were known to the parties, but what was undisclosed was the location of the ivory. Accordingly, this paragraph of the agreement does not apply to the ivory. Second, this issue was not raised below and is therefore not preserved. Similarly unpreserved and meritless is the former wife’s contention that the award to the former husband upsets the equitable distribution scheme. It was the former wife who upset the distribution scheme by taking these assets, but then agreeing in the settlement agreement that the former husband had possession of them.
Finally, the former wife claims that the court fundamentally erred in ordering her to pay the former husband for the ivory collection because she used the proceeds of the ivory sale to meet her essential needs. She points to her testimony that she was in desperate straits when she took the ivory. Indeed, the court found that she was having serious financial problems when she entered the warehouse. Here, essentially, the former wife is claiming that the proceedings below were so defective, so fundamentally unfair, that the error she asserts can be asserted for the first time on appeal. Compare Kilgore v. State, 688 So.2d 895, 898 (Fla.1996). We do not agree. If this issue were so fundamentally important the former wife should have expressly told the court below that although she took the ivory collection, she returned it, but that if the court did not believe she returned it, she spent the proceeds of its sale on essential needs. Accordingly, this issue is without merit.
AFFIRMED.
PETERSON and TORPY, JJ., concur.

. The former husband also referred to 150 pieces, but he seemed to have been saying that there were 150 pieces that he could not account for in addition to the ivory he was claiming the former wife took.