988 So.2d 1138 (2008)
Eleanor KIRSCHNER, Appellant,
v.
John BALDWIN and Gina Baldwin, Appellees.
No. 5D07-3143.
District Court of Appeal of Florida, Fifth District.
August 1, 2008.
*1139 Thomas C. Houck, Cocoa Beach, for Appellant.
Allen P. Whitehead of Frese, Hansen, Anderson, Anderson, Heuston & Whitehead, P.A., Melbourne, for Appellee.
*1140 EVANDER, J.
Eleanor Kirschner brought an action for injunctive relief and damages against her neighbors, John Baldwin and Gina Baldwin, alleging that the Baldwins had constructed a new garage in violation of their subdivision's recorded restrictions. After a non-jury trial, the trial court found that the subdivision's restrictions imposed a 35-foot rear setback requirement on the Baldwins' property and that their garage encroached almost 15 feet into the setback. Notwithstanding these findings, the trial court found that Kirschner was not entitled to injunctive relief because: (1) she lacked standing to bring her action; (2) her claim was barred by the administrative res judicata doctrine; (3) she had waived any right to bring her claim by not objecting to the construction of the garage at an earlier date; (4) she was estopped to enforce her claim because of her inaction; and (5) it would be inequitable to require the Baldwins to remove the garage. The trial court dismissed Kirschner's claim for damages because of her failure to introduce evidence upon which a monetary award could be based.
We affirm, without discussion, the trial court's dismissal of Kirschner's claim for damages. However, we reverse the trial court's denial of Kirschner's claim for injunctive relief and remand for further proceedings.
Kirschner and the Baldwins reside on adjoining lots in the Coquina Point Subdivision in Malabar, Florida. It is undisputed that both lots are subject to the subdivision's Declaration of Restrictions, Limitations, Conditions, and Agreements ("Declaration"). The Baldwins' residence is located on the southwest corner of Coquina Terrace and Rocky Point Road. The Indian River flows alongside Rocky Point Roadimmediately east of the Baldwins' property. Pursuant to the Declaration, the front of the Baldwins' property is deemed to face Rocky Point Road. Accordingly, the Baldwins' north side yard is adjacent to Coquina Terrace. The Kirschner property fronts Coquina Terrace and is immediately west of the Baldwins' property. Thus, the Baldwins' rear lot line abuts Kirschner's east side yard.
The Declaration provided varying setback requirements for each lot. As to the Baldwins' property, the Declaration provided for 20-foot side setbacks and a 35-foot rear setback. The Declaration also provided for a property owners' association (POA). Plans for the construction of any structure were required to be submitted for approval to the POA. The POA was authorized to refuse approval of plans and specifications "upon any ground, including purely aesthetic grounds." Importantly, the Declaration provided that although the POA was to approve or disapprove submitted plans within thirty (30) days, its failure to do so did not relieve a lot owner of the obligation to comply with the Declaration's covenants and restrictions. Finally, the Declaration clearly provided that the covenants and restrictions contained therein run with the land and inure to the benefit of each lot owner.
On October 9, 2003, the Baldwins mailed a letter to the POA enclosing a copy of the plans and surveys for the proposed construction of a large garagecapable of holding eight or more cars. The Baldwins did not receive a response from the POA within 30 days of submitting the plans. The POA's then-president, John Stillings, testified that he was out of the state from July, 2003 until late November, 2003, and was never made aware of the Baldwins' written request for approval of building plans for the new garage. He described the state of the association as "laid back."
In order to obtain the necessary building permit, the Baldwins also submitted *1141 their plans to the Town of Malabar. Without a variance, the Town Code required that any structure built on the Baldwins' lot would have to be a minimum of 20 feet from Coquina Terrace. The Baldwins' plans called for the north wall of the garage to be only 15 feet from Coquina Terrace. Accordingly, the Baldwins requested a five-foot setback variance. Notice of the requested variance was sent by Malabar to neighboring property owners, including Kirschner. Kirschner did not file any objections or appear at any town meeting in which the Baldwins' variance request was considered. Importantly, however, the Baldwins' variance did not relate to any rear setback requirement. The notice sent by Malabar to Kirschner did not reflect or suggest that the Baldwins' proposed garage would be less than 35 feet from Kirschner's property.
Upon obtaining the building permit, the Baldwins began construction of their garage on or about January 13, 2004. The walls and trusses were up shortly thereafter. At some point in late January or early February, Mr. Stillings confronted Mr. Baldwin about the garage appearing to be in violation of the subdivision's restrictions. Mr. Baldwin, by his own admission, told Mr. Stillings "if you have something on your mind or something you don't like, get an injunction, stop me ... I'm going to proceed unless I hear otherwise."
On February 25, 2004, the POA mailed a letter to the Baldwins requesting the plans for the garage and inviting them to attend a POA meeting scheduled for March 8th. By March 8th, the exterior of the garage was substantially completed. The Baldwins did not attend the March 8th Meeting.
The POA consulted its attorney and held meetings on March 8th, March 22nd, and March 29th, to discuss whether the POA should initiate legal action against the Baldwins. Ultimately, the POA declined to file suit against the Baldwins. The Baldwins were notified of the POA's decision by letter dated March 30, 2004. The letter reflects that the POA chose not to pursue litigation because a POA officer (not Mr. Stillings) had given "verbal approval" of the plans to Mr. Baldwin. (Interestingly, Mr. Baldwin later testified that he could not recall receiving "verbal approval" from a POA officer, and that even if he had, he would not have given any weight to an "approval" that was not in writing.)
After the POA declined to bring suit against the Baldwins, Kirschner contacted an attorney. Kirschner's attorney delivered a letter to the Baldwins on May 20, 2004, notifying them of Kirschner's intent to enforce the Declaration's restrictions.
Kirschner filed suit on August 23, 2004, and the trial was held on August 13, 2007. In a detailed written order, the trial court set forth five alternative reasons to deny Kirschner's request for injunctive relief. We will address each one.

STANDING
The trial court found that Kirschner did not having standing to assert her claim because the Declaration did not expressly grant lot owners the right to enforce the subdivision restrictions. We respectfully disagree with the trial court's conclusion. The Declaration specifically provided that the covenants and restrictions inured to the benefit of all lot owners. As a clearly intended beneficiary of the Declaration, Kirschner had the right to enforce the subdivision's restrictions. Osius v. Barton, 109 Fla. 556, 147 So. 862, 868 (1933) (restrictive covenants may be enforced by those who may be considered beneficiaries of covenants); see also Gercas v. Davis, 188 So.2d 9, 11 (Fla. 2d DCA *1142 1966) (well settled that residential lot owners are beneficiaries of restrictive covenants); Batman v. Creighton, 101 So.2d 587, 590 (Fla. 2d DCA 1958) (benefit of restrictive covenants inures to each purchaser in subdivision). The fact that the Declaration granted the POA power to enforce the restrictions did not eliminate Kirschner's enforcement rights. The Declaration's language that the restrictions and covenants contained therein inured to the benefit of all lot owners implicitly confirmed Kirschner's right of enforcement.

ADMINISTRATIVE RES JUDICATA
The doctrine of administrative res judicata is applicable to rulings or decisions of administrative bodies. Miller v. Booth, 702 So.2d 290, 291 (Fla. 3d DCA 1997). Res judicata precludes the litigation of the same claim between the same parties on the same cause of action. Costello v. The Curtis Bldg. P'ship., 864 So.2d 1241, 1244 (Fla. 5th DCA 2004). The administrative res judicata doctrine is not applicable in this case. First, the POA is not an administrative body. Second, the POA's decision not to pursue litigation against the Baldwins did not constitute an adjudication, nor purport to constitute an adjudication, of the dispute between Kirschner and the Baldwins.

WAIVER
The trial court found that Kirschner waived any right she may have had to enforce the restrictions in the Declaration due to her failure to timely object. In reaching this conclusion, the trial court emphasized that Kirschner had failed to notify Malabar of her objections and had further failed to voice her objections directly to the Baldwins prior to the delivery of her attorney's letter on May 20, 2004.
We initially observe that Kirschner's failure to notify Malabar of her objections is not supportive of the Baldwins' waiver argument. The Baldwins' variance request related to a side setbacknot the rear setback. The Baldwins could have constructed a garage in compliance with the Declaration's rear setback requirements regardless of whether the variance request was granted by the Town of Malabar. The town's notice to Kirschner did not suggest, in any way, that the Baldwins were intending to place the garage's west wall only 20 feet from Kirschner's lot. Kirschner could properly assume that the Baldwins would construct their garage in compliance with the Declaration's rear setback requirements.
The trial court found that construction of the garage began on or about January 13, 2004. The block walls and trusses were up by the end of January or February and the exterior of the garage was substantially completed by March 8, 2004. It is undisputed that Mr. Baldwin was made aware of at least one objection to the proposed garage in late January or early February. The relatively short time periods existing in this case simply do not support a finding of waiver. "Waiver" is the voluntary and intentional relinquishment of a known right or conduct which infers the relinquishment of a known right. Taylor v. Kenco Chemical & Mfg. Corp., 465 So.2d 581, 587 (Fla. 1st DCA 1985). When a waiver is implied, the acts, conduct or circumstances relied upon to show waiver must make out a clear case. Woodlands Civic Ass'n., Inc. v. David W. Darrow, D.C., P.A., 765 So.2d 874, 877 (Fla. 5th DCA 2000). Furthermore, in the context of restrictive covenants, this court has stated that there must be a "long-continued waiver or acquiescence in the violation of a restrictive covenant" for waiver to be found. Mizell v. Deal, 654 So.2d 659, 663 (Fla. 5th DCA 1995). Here, the Baldwins received an objection to their proposed *1143 garage from the POA's president within a few weeks of commencement of construction.

ESTOPPEL
The evidence also does not support a finding of estoppel. The Baldwins acknowledge that they did not rely on any representation by Kirschner in deciding to place their garage less than 35 feet from Kirschner's lot line. Estoppel based on silence cannot exist where the parties have equal knowledge of the facts or have the same means of ascertaining that knowledge. See Mizell, 654 So.2d at 663; Pelican Island Prop. Owners Ass'n., Inc. v. Murphy, 554 So.2d 1179 (Fla. 2d DCA 1989).

EQUITY
Lastly, the trial court found that it would be inequitable to require the Baldwins to remove that portion of the garage which encroached into the 35-foot setback. In reaching this conclusion, the trial court considered the significant cost of removing the encroachment as well as the lack of evidence that the value of Kirschner's property was diminished by the construction of the garage. While acknowledging that the Baldwins' garage impaired Kirschner's view of the river, the trial court found that there was no evidence as to whether the encroachment into the setback impaired Kirschner's view to any greater amount than if the garage had been constructed in compliance with the Declaration's restrictions. The trial court further concluded that the Baldwins had not willfully and intentionally violated the Declaration's restrictions.
A trial court may properly decline to order the removal of an encroachment when it would be inequitable to do so. See, e.g., Brewer v. Hibbard, 424 So.2d 988 (Fla. 5th DCA 1983); Pilafian v. Cherry, 355 So.2d 847 (Fla. 3d DCA 1978). A primary factor to be considered in determining whether a mandatory injunction should be entered is whether the defendant's violation of a restrictive covenant was intentional and willful. Daniel v. May, 143 So.2d 536 (Fla. 2d DCA 1962). In the present case, the trial court made two erroneous legal findings to support its conclusion that the Baldwins had not willfully violated the setback restriction. First, the trial court found that the Baldwins could reasonably rely upon Kirschner's failure to object to their variance request in deciding to proceed with construction of their garage. As previously observed, the Baldwins' variance request did not relate to the rear setback requirement. Additionally, the variance request did not give constructive notice to Kirschner of the Baldwins' intent to construct a garage less than 35 feet from Kirschner's lot line. Therefore, it was not reasonable for the Baldwins to assume that Kirschner did not object to the proposed encroachment.
Second, the trial court wrongly concluded that there was a conflict between the Declaration's provision requiring the POA to act on a lot owner's proposed plans within 30 days and the Declaration's provision that no structure was to be built in violation of the Declaration's covenants or restrictions. Section 4 of the Declaration gave the POA the authority to reject plans and specifications for the construction of a structure "upon any ground, including purely aesthetic grounds." The last paragraph of section 4 provided:
Should [the POA] fail to approve or disapprove the plans and specifications submitted to [it] by the owner of a lot or lots within the subdivision within thirty (30) days after written request therefor, then such approval shall not be required, *1144 provided, however, that no building or other structure shall be erected or be allowed to remain on any lot which violates any of the covenants or restrictions herein contained.
These provisions are not in conflict. We interpret this section to mean that the POA would lose its right to reject a proposed structure on aesthetic grounds if it did not act within 30 days of the lot owner's submittal of plans. On the other hand, the POA's failure to approve or disapprove submitted plans within 30 days could not be construed to constitute approval of the construction of a building or other structure in violation of the Declaration's covenants or restrictions.
In light of our opinion, the trial court is directed to reconsider whether equity supports the granting of a mandatory injunction. See Brewer; Daniel.
REVERSED and REMANDED.
PALMER, C.J. and LAWSON, J., concur.