IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


RAYMOND N. SMITH AND KRISTY L. SMITH,

      Appellants,

 v.

                                 Case Nos.  5D21-1383
                                               5D21-2174
                                LT Case No. 2019-CA-018766


KEVIN CARLTON AND CIN CARLTON,

      Appellees.

_____/

Opinion filed September 23, 2022

Appeal from the Circuit Court
for Brevard County,
George Paulk, Judge.

David G. Larkin and Jesse L.
Kabaservice, of Fallace & Larkin,
L.C., Melbourne, for Appellants.

Allan P. Whitehead and Erika McBryde,
of Frese, Whitehead & Anderson,
P.A., Melbourne, for Appellees.


EDWARDS, J.

This case involves tons of trash, purloined gates, missing fences, and broken promises. Appellees, Kevin and Cin Carlton, contracted to sell their horse farm, complete with a barn, horse stalls, fences, and gates, to Appellants, Raymond and Kristy Smith. Appellants did a walk-through of the property prior to closing and saw that there was still a lot of trash around, despite Appellees' written agreement to clear out the trash by closing. Shortly after closing, Appellants learned that the trash was still there and several sections of fence and gates had been removed, contrary to the terms of the contract. The trial court's finding that Appellees thereby breached the contract is undisputed.[1] Appellants appeal the court's ruling that they had waived all remedies when they closed on the property. We hold that the trial court erred in finding waiver of Appellants' right to seek money damages and reverse the judgment entered in favor of Appellees.[2] We remand this matter for entry of judgment in favor of Appellants with damages based on the

---

[1] Appellees have not cross-appealed; thus, they are bound by the trial court's findings and rulings set forth in the final judgment.

[2] Since Appellees waived their affirmative defense of merger below, by raising the defense for the first time at trial, and because the trial court's final judgment does not set forth sufficient factual findings to permit us to fully and independently consider the potential application of merger to this case, we decline to address Appellees' tipsy coachman argument based on merger. *See Boyd v. Boyd*, 874 So. 2d 696, 698 (Fla. 5th DCA 2004); *Foley v. Azam*, 257 So. 3d 1134, 1139 n.3 (Fla. 5th DCA 2018).

evidence admitted during trial. We also reverse the award of attorney's fees and costs in favor of Appellees and instruct the trial court to award Appellants their fees and costs.

## Background

### Pre-contract Property Inspection

In June 2018, Appellees listed a twenty-five-acre farm located in Mims, Florida, ("the Property") for sale. The Property was marketed as a working horse farm with a small house, a barn, paddock area, horse stalls, fencing, and separated pastures. Appellants were interested in purchasing the Property and inspected the Property prior to entering into a purchase contract. Appellants made it known to Appellees that they intended to keep horses on the Property. While there, Appellants spoke with the caretaker of the Property, a friend of Appellees, and learned that she kept her horses on the Property.

### Contract

The parties entered into a standard Florida Bar/Florida Realtors "As-Is" contract for the Property. The contract specified that all improvements and fixtures existing on the Property at the time the initial offer was made

3

were included in the sale.[3]  The contract further required Appellees to have removed all trash from the Property by the time of closing.  The contract contained a provision, paragraph 18(P), that required any modification or change to the contract to be in writing and signed by the party intended to be bound.  It also contained in paragraph 18(Q) a provision that a party's waiver as to one right would not constitute a waiver of any other provision or right.

Inspections

Before entering into the contract, Appellants observed that the Property was littered with trash and debris but was otherwise as described in the listing.[4]  The contract provided Appellants with the right to inspect the Property on two occasions.  First, within ten days of the effective date of the contract, they could inspect the Property to determine if it was acceptable to them; if it was not, they could notify Appellees in writing, terminate the contract, and have their deposit returned.  Appellants conducted this inspection and went forward with the contract.

---

[3] The contract form permitted listing of excluded improvements or fixtures, but the parties did not exclude anything.

[4] Appellees' failed attempt at running a nursery on the Property had left old mowers, tractors, fans, a dilapidated greenhouse, scrap metal, a feed spreader, and thousands of plant pots on the Property.

Second, the contract permitted Appellants to perform a pre-closing walk-through inspection, on the day of or the day prior to closing, to confirm that all items of personal property remained and to verify that Appellees had continued to maintain the Property. Utilizing this provision, Appellants inspected the Property the day before closing and witnessed a hectic scene. There were several trucks and horse trailers on scene, the tenant who lived in the house on the Property was still collecting his belongings and preparing to leave, the caretaker was in the process of removing her horses from the Property, and there still was an overwhelming amount of trash and debris. Appellants, through their realtor, threatened to cancel the sale contract. They also offered to deal with the remaining trash and debris themselves in return for a reduction in the price, but Appellees rejected that offer. According to Mr. Smith's trial testimony, Appellees' realtor explained that they were working on removing all the trash before closing. Although the contract permitted Appellants to make a follow up walk-through on the date of closing, they did not do so prior to closing.

## Closing and Post-Closing

Despite what they observed the day prior, Appellants went through with the closing on November 16, 2018. Having already signed their papers, Appellants and one of the Appellees were not present at the closing. After

closing, Appellants drove to the Property and noticed for the first time that some gates and fencing had been removed and that there was still a vast amount of trash on the Property. Within days of closing, they threatened Appellees with legal action and when Appellees failed to respond, Appellants followed through with filing suit approximately three months after closing. Ultimately, a bench trial was conducted.

Purloined Gates and Missing Fences

According to the trial court, the caretaker of the Property removed some gates and fencing from the Property, claiming that she owned them.[5] While the trial court found that the caretaker talked with Appellants prior to entering into the contract, it noted that she did not mention to Appellants that any of the gates or fences were hers or that she would be removing them. Apparently, she took and was using those gates and fencing at another nearby property where she was now boarding her horses. The trial court confirmed that the fencing, fence gates, and horse stall gates were indeed fixtures for purposes of the sales contract and were necessary items for keeping horses on the Property.

---

[5] The caretaker testified to taking one small section of fence and one gate, while Appellants presented evidence of several sections of fence and as many as nine gates having gone missing between the pre-closing and post-closing inspections.

Tons of Trash

The trial court rejected Appellees' argument that the meaning of "trash" was ambiguous; it found that Appellees clearly understood but breached their contractual obligation. Appellants testified that they used employees from the roofing company they owned to remove the remaining trash and debris, which required fifteen to twenty dumpster loads and three weeks to accomplish.

Standard of Review

"We review de novo the trial court's interpretation of a contract. Interpretation of a contract is a question of law, and an appellate court may reach a construction contrary to that of the trial court." *Whitley v. Royal Trails Prop. Owner's Ass'n,* 910 So. 2d 381, 383 (Fla. 5th DCA 2005) (internal citations omitted). However, "[t]he question of waiver is an issue of fact, for which a trial judge's finding will be reversed 'only if there is no competent, substantial evidence to support' it." *WSG West Palm Beach Dev., LLC v. Blank*, 990 So. 2d 708, 715 (Fla. 4th DCA 2008) (quoting *Hill v. Ray Carter Auto Sales, Inc.,* 745 So. 2d 1136, 1138 (Fla. 1st DCA 1999)). "Competent substantial evidence is tantamount to legally sufficient evidence, and the appellate court will assess the record evidence for its sufficiency only, not its weight." *Banks v. State*, 732 So. 2d 1065, 1067 (Fla. 1999).

## Analysis

Waiver is "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). Any contractual right can be waived. *See id.* "The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Bishop v. Bishop*, 858 So. 2d 1234, 1237 (Fla. 5th DCA 2003); *see also Zurstrassen v. Stonier*, 786 So. 2d 65, 70 (Fla. 4th DCA 2001) ("A waiving party must possess all of the material facts in order to constitute waiver." (citation omitted)).

As there was no express waiver, the trial court implied waiver based on Appellants' conduct. And "[w]hen a waiver is implied, the acts, conduct or circumstances relied upon to show waiver must make out a clear case." *See Kirschner v. Baldwin*, 988 So. 2d 1138, 1142 (Fla. 5th DCA 2008) (citation omitted). Therefore, to constitute an implied waiver, there must have been a clear showing that Appellants voluntarily and intentionally relinquished their rights to the removal of all trash and inclusion of all fixtures on the Property.

8

*See Raymond James Fin. Servs.*, 896 So. 2d at 711. The evidence here does not establish a clear showing.

Waiver – Gates and Fencing

There is no evidence that Appellants knew, prior to or at the time of closing, that any gates or fencing were going to be removed. Furthermore, as soon as they became aware of the missing gates and fencing, Appellants complained to Appellees, threatened, and then promptly filed legal action on March 1, 2019. This is the antithesis of waiver. Thus, the trial court erred with regard to finding Appellants waived Appellees' contractual obligation to convey all fixtures such as fencing, fence gates, and stall gates.

Waiver – Trash Removal

The trial court's finding that Appellants waived the right to require Appellees to remove the trash is flawed for two reasons. First, the trial court misperceived the deadline for Appellees to remove the trash. Second, the trial court inexplicably found that the contract provided Appellants with a single remedy, cancellation or termination of the deal, when in fact the contract specifically permitted post-closing suits for money damages regarding breaches of the contract.

The contract specifically provided that "at Closing, [Appellees] shall have removed all personal items and trash from the Property . . . ." Thus,

9

Appellees were not obliged to remove all the trash prior to closing, nor could Appellants have declared a breach for their pre-closing failure to do so. The trial court also found that Appellants intended to enforce the trash removal requirement, but it found waiver, in part, because they delayed enforcement until after closing by suing for money damages. That finding ignores that Appellants' right to a trash-free property only ripened at closing, regardless of what they noticed the day before closing.

Furthermore, "[m]ere delay is insufficient to support waiver." *O'Brien v. O'Brien*, 424 So. 2d 970, 971 (Fla. 3d DCA 1983); *see also Mercede v. Mercede Park Italian Rest., Inc.*, 392 So. 2d 997, 998 (Fla. 4th DCA 1981) (holding where landlord delayed ten months to make demand upon tenant for increased rent, "mere delay [wa]s insufficient to support a defense of either waiver or estoppel"); *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006); *Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1052 n.4 (Fla. 1997) ("Waiver does not arise from forbearance for a reasonable time, but may be inferred from conduct or acts 'putting one off his guard and leading him to believe that a right has been waived.'" (quoting *Gilman v. Butzloff*, 22 So. 2d 263, 265 (Fla. 1945))). As previously noted, on the day before and the day after closing, Appellants made it clear that they were dissatisfied with and did not accept Appellees'

10

failure to remove the trash, and the suit was filed in just over three months following closing.

Under these facts, there was no competent substantial evidence that Appellants unreasonably delayed enforcing their rights or that Appellees were lulled into inaction and led to believe that leaving tons of trash was acceptable. Thus, the trial court's ruling was erroneous based on timing.

The second flaw in the finding of waiver is the trial court's ruling that essentially found that Appellants had but a single remedy—namely, cancellation or termination of the contract. The trial court correctly noted that the sales contract gave Appellants several opportunities to inspect and the right to terminate the contract under certain circumstances. By not doing a follow-up pre-closing inspection on the day of closing, Appellants may have waived that right. Furthermore, by going through with closing, Appellants may have waived their right to terminate the contract as a remedy for Appellees' breaches, although it is not clear that the contract provided such a remedy at that point. However, the anti-waiver provision found in paragraph 18(Q) does not support a finding that waiver of the right to inspect and the right to terminate somehow morphed into a waiver of Appellants' other rights to require full performance by Appellees.

Additionally, paragraph 15(b) of the contract provides that even if Appellants, as the buyers, had sought return of their deposit from Appellees, as the sellers, on the day prior to or at closing, they could elect to do so without "thereby waiving any action for specific performance or damages resulting from [Appellees'] breach . . . ."

Further, the trial court made no mention of paragraph 16 of the contract, which provides in part:

> 16. **DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question arising out of or relating to this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:
>
> (a) [By mediation][6]
>
> (b) . . . Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive closing or termination of this Contract.

It is clear, as Appellants argued, that the contract expressly provided them with remedies beyond termination, including specifically the remedy to initiate and pursue legal action for money damages. We find, as a matter of law, that the trial court did not properly interpret the contract and erred in

---

[6] Nobody raised the failure to pursue mediation as an issue below or on appeal.

ruling that Appellants waived any contractual remedies other than any right to terminate the contract.

Conclusion

Accordingly, we conclude and hold that there was no competent substantial evidence supporting the trial court's ruling that Appellants waived Appellees' contractual obligation to ensure that all fixtures such as fencing, fence gates, and horse stall gates remained on the property as of closing. We further conclude and hold that there was no competent substantial evidence to support a finding of waiver based on delay by Appellants in enforcing their contract rights, in light of them providing written complaints and notice of intended legal action on the days prior to and immediately following closing and filing suit in little more than three months. Finally, we conclude and hold that the trial court erred as a matter of law in interpreting the contract to not permit Appellants to pursue a lawsuit seeking money damages, despite that remedy being clearly and expressly set forth in the contract.

The judgment in favor of Appellees is hereby reversed as is the judgment awarding Appellees their attorney's fees and costs. We remand this matter to the trial court for entry of a judgment in favor of Appellants and against Appellees with the amount of damages to be determined based upon

the evidence already presented during the bench trial. The trial court is instructed to grant Appellants' motion for its reasonable attorney's fees and costs incurred at trial. By a separate order, we grant Appellants' motion for appellate attorney's fees. As to both of those motions, the trial court shall determine what those reasonable fees are in further proceedings.

REVERSED and REMANDED.

EVANDER and WALLIS, JJ., concur.