# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D22-1147
LT Case No. 2021-CA-000669

———————————————

T.G. UNITED, INC., AND MENTAL
TOUGHNESS TRAINING CENTER,
LLC,

    Appellants,

    v.

AADD PROPERTIES, LLC,

    Appellee.

———————————————

On appeal from the Circuit Court for Hernando County.
Pamela Stinnette Vergara, Judge.

Mahra Sarofsky, of Ward Damon, PL, West Palm Beach, for
Appellant.

George L. Sigalos and Damon E. Gasser, of Simon & Sigalos, LLP
Boca Raton, for Appellee.


September 22, 2023


PRATT, J.

Section 83.232(5), Florida Statutes (2022), provides that
during the pendency of a nonresidential eviction action, "[f]ailure
of the tenant to pay the rent into the court registry pursuant to

court order shall be deemed an absolute waiver of the tenant's defenses," and "the landlord is entitled to an immediate default for possession without further notice or hearing thereon." This appeal presents the question whether breach of an order requiring payment of rent through a lawyer's trust account or directly to the landlord—rather than into the court registry—can form the basis for this statutory default-for-possession procedure. Under the statute's plain language, it cannot. Therefore, we reverse the trial court's entry of default and final judgment of eviction, and we remand this case for further proceedings.

## I.

In February 2021, T.G. United, Inc. ("Tenant") and AADD Properties, LLC ("Landlord") entered into a commercial lease agreement for two properties. Mental Toughness Training Center, LLC ("Guarantor") signed the lease agreement as guarantor. Under the agreement, rent was due "no later than the first day of each calendar month."

In July 2021, Landlord notified Tenant that it was in arrears for $28,647.25 in unpaid rent and sales tax. Landlord gave notice that it was terminating the lease, and it instructed Tenant to surrender the leased premises. Landlord then filed suit against Tenant and Guarantor, asserting the following claims: unlawful entry and unlawful detainer against Tenant (Count I); nonresidential eviction against Tenant (Count II); holdover rent damages against Tenant and Guarantor (Count III); and damages against Guarantor (Count IV).

Tenant and Guarantor answered the complaint and asserted several affirmative defenses. They then filed a motion to determine rent, in which they asserted that they had been paying rent to Landlord's lenders as had "become the customary course of dealing for the parties," and they were "prepared to pay into the court registry the amount of rent as determined by the Court."

After a hearing on the motion, the court entered an order determining rent. The Court noted that Tenant and Guarantor had paid rent for September and October 2021 to their counsel's trust account. It ordered them to "continue paying rent in the monthly amount of $15,000 (plus tax) through [that] trust account." Three

2

days later, Landlord moved to release the September and October 2021 rent payments and to require that future rent payments be disbursed to Landlord.

On December 3, 2021, over Tenant's and Guarantor's opposition and after a hearing, the court granted Landlord's motion for disbursement. The court found that "it would be a hardship for [Landlord] not to receive the rental payments which were previously being paid directly to the mortgage company." The court ordered that "Defendant (and or defense counsel) shall ensure that the previously ordered rental payments . . . are timely received by [Landlord]. This may be accomplished through the trust account of counsel for the Defendants or via direct payments to [Landlord]."

On April 6, 2022, Landlord moved for immediate default for possession under section 83.232(5), noting that the April 2022 rent payment did not arrive by April 1 and therefore was not timely received under the court's December 3, 2021 order. Tenant and Guarantor opposed the motion. On the law, they argued that the immediate default procedure of section 83.232(5) applies only when a court order directs a tenant to pay rent into "the court registry," and here, the court had instead ordered Tenant to make payments either to its lawyer's trust account or to Landlord directly. On the facts, they argued that the April 2022 rent payment was timely under the "mailbox rule" because it was mailed on March 30, 2022. Landlord conceded that the payment arrived on April 7, 2022, but Landlord promptly rejected and returned it as untimely.

On May 3, 2022, the trial court entered a default and final judgment of eviction after default, disposing of Count II of the complaint. The court found that because Landlord did not receive the April 2022 rent payment by April 1, Tenant had failed to comply with its December 3, 2021 order disbursing rent. The court then concluded that this noncompliance triggered the statutory immediate default procedure, and Landlord was thus entitled to an immediate default for possession without further notice or hearing. On May 4, the court issued writs of possession for the leased properties, and the following day, Tenant entered bankruptcy proceedings.

3

Tenant and Guarantor timely appealed the trial court's order of default and final judgment of eviction after default.[1] They also unsuccessfully sought stays of the writs of possession. We have jurisdiction.[2]

## II.

On appeal, Tenant raises arguments regarding the interpretation of both section 83.232(5) and the trial court's December 3, 2021 order. Both of those interpretive issues present questions of law, and we review *de novo* the trial court's resolutions of those legal questions. *See State v. Ingram*, 299 So. 3d 546, 547 (Fla. 5th DCA 2020) ("[S]tatutory interpretation is . . . subject to de novo review."); *McCann v. Walker*, 852 So. 2d 366, 367–68 (Fla. 5th DCA 2003) (per curiam) (applying de novo review to determine the legal operation and effect of a court order).

## III.

Tenant first argues that mailing the April 2022 rent payment on March 30, 2022, sufficed to achieve compliance with the trial court's December 3, 2021 order. Tenant is incorrect. The order directed it to "ensure that" the rental payments were "timely received by" Landlord; in other words, to ensure that Landlord "received" rental payments by the first of each month. This language ties the timeliness of payment to Landlord's *receipt* of the payment, and it precludes the "mailbox" interpretation of the order

---

[1] Landlord argues that Guarantor lacks standing to appeal the final judgment of eviction. Landlord is correct. Because Guarantor was not named as a defendant in Count II of the complaint, and because the order on appeal granted relief only against Tenant, Guarantor is not a proper party to this appeal. We thus dismiss Guarantor as a party to this appeal. *See Fla. Indus. Power Users Grp. v. Graham*, 126 So. 3d 1056 (Fla. 2013).

[2] The parties inform us that the U.S. Bankruptcy Court for the Middle District of Florida entered an order granting limited relief from the automatic bankruptcy stay for Tenant to prosecute this appeal and seek relief from the trial court's writs of possession.

4

that Tenant urges us to adopt. We thus discern no error in the trial court's conclusion that Tenant breached its order.

## IV.

Because Tenant breached the trial court's December 3, 2021 order, we must decide whether that breach triggered section 83.232(5)'s immediate default for possession. The plain language of the statute compels us to conclude that it did not.

## A.

Section 83.232 establishes a procedure for payment of rent during the pendency of a commercial landlord's claim for possession. In subsection (1), the statute provides:

> In an action by the landlord which includes a claim for possession of real property, the tenant shall pay into the court registry . . . such amount as is determined by the court, and any rent accruing during the pendency of the action, when due, unless the tenant has interposed the defense of payment or satisfaction of the rent in the amount the complaint alleges as unpaid. . . . Even though the defense of payment or satisfaction has been asserted, the court, in its discretion, may order the tenant to pay into the court registry the rent that accrues during the pendency of the action, the time of accrual being as set forth in the lease. If the landlord is in actual danger of loss of the premises or other hardship resulting from the loss of rental income from the premises, the landlord may apply to the court for disbursement of all or part of the funds so held in the court registry.

§ 83.232(1). In subsections (3) and (4), the statute further provides that "[t]he court, on its own motion, shall notify the tenant of the requirement that rent be paid into the court registry by order,

5

which shall be issued immediately upon filing of the tenant's initial pleading, motion, or other paper," and "[t]he filing of a counterclaim for money damages does not relieve the tenant from depositing rent due into the registry of the court." § 83.232(3)–(4).

Finally, in subsection (5), the statute specifies a remedy for the tenant's noncompliance: immediate default for possession. Under that subsection, "[f]ailure of the tenant to pay the rent into the court registry pursuant to court order shall be deemed an absolute waiver of the tenant's defenses," and "the landlord is entitled to an immediate default for possession without further notice or hearing thereon." § 83.232(5).

**B.**

"[T]he text and structure of the relevant statute[ ]—and no other considerations—control our resolution of this appeal." *Burton v. Oates*, 362 So. 3d 311, 320 (Fla. 5th DCA 2023) (Pratt, J., concurring in part and concurring in result); *accord Taylor v. Nicholson–Williams, Inc.*, Nos. 5D22-1410, 5D22-1557, 48 Fla. L. Weekly D1434 (Fla. 5th DCA July 21, 2023) ("To referee this debate, we focus our attention on the statutory text and structure."). This "supremacy-of-the-text principle," which we are bound to apply, *Ham v. Portfolio Recovery Associates, LLC*, 308 So. 3d 942, 946 (Fla. 2020), leads us to conclude that breach of an order requiring payment of rent through a lawyer's trust account or directly to the landlord does not trigger section 83.232(5)'s immediate default for possession.

Section 83.232(5) unequivocally makes its immediate default hinge on "[f]ailure of the tenant to pay the rent *into the court registry* pursuant to court order." (emphasis added). To state the obvious, a private attorney's trust account is not "the court registry." Neither is a landlord's account. While the terms "court registry" and "registry of the court" are not defined anywhere in section 83.232, they carry a clear, ordinary meaning: the depository held and controlled by the court and its staff. Indeed, other statutes that speak of "the court registry" or "the registry of the court" make plain that the terms describe the depository held and controlled by the court. *See, e.g.*, § 28.24(11), Fla. Stat. (2023) (directing circuit court clerks to assess certain service charges "[f]or receiving money into the registry of court"); § 73.111, Fla.

6

Stat. (2023) (noting that when a post-judgment deposit is made "into the registry of the court," it will prompt "the clerk's certificate that the compensation has been paid into the court"); § 717.113, Fla. Stat. (2023) (categorizing as "[p]roperty held by courts and public agencies" the "money held in the court registry and for which no court order has been issued to determine an owner").

"[O]ur task is to interpret the law according to the ordinary meaning it conveys to the public at the time" it was enacted. *Taylor*, 2023 WL 4670253, at *7 n.3. It stretches all credulity to assert that members of the public ever have understood the term "court registry" to encompass attorneys' and landlords' own accounts. This is especially evident when contrasting section 83.232 with other statutes in which the Legislature *has* chosen to allow for rent or other monies to be paid outside the court registry. For example, section 697.07(5), Florida Statutes (2023), governs assignment of rents during the pendency of foreclosure actions. The statute provides: "[I]n a foreclosure action, and notwithstanding any asserted defenses or counterclaims . . . , a court of competent jurisdiction, pending final adjudication of any action, may require the mortgagor to deposit the collected rents into the registry of the court, *or in such other depository as the court may designate.*" *Id.* (emphasis added). As another example, section 61.18, Florida Statutes (2023), directs that sureties on defaulted alimony and child-support bonds "shall be ordered to pay into the registry of court, *or to any party the court may direct*, the sum necessary to cure the default." (emphasis added). Section 83.232 contains no similar allowance for payments outside the court registry, and we cannot add one by judicial gloss. *See Burton*, 362 So. 3d at 316 (declining to add language to a statute).

In sum, section 83.232(5)'s immediate default is triggered only by a "[f]ailure of the tenant to pay the rent into the court registry pursuant to court order," and because a landlord's or private attorney's account is not "the court registry," Tenant's breach of the trial court's December 3, 2021 order did not trigger section 83.232(5)'s immediate default for possession.

7

## C.

Landlord offers various reasons why we should depart from the statute's plain language. None of Landlord's arguments is persuasive.

*First*, Landlord argues that the trial court had authority to modify the statutory procedure to direct payment to accounts other than the court registry. The problem with this argument is that each time the statute speaks of a tenant's rent payments, it provides that those payments "shall" or "must" be made "into the court registry." *See* § 83.232(1). This language is mandatory, not permissive. Moreover, as we explain above, unlike several other statutes, section 83.232 does not contain language authorizing the court to direct payments outside the court registry. This omission is particularly striking when we consider that the statute *does* allow the court to modify the statutory procedure in certain other ways—for example, by allowing the court to extend certain time periods for making payments. *See* § 83.232(1). Had the Legislature chosen to allow the court to similarly modify where the rent payments are sent, held, and disbursed from, it would have included language to that effect. Instead, the statute describes the tenant's obligation to make payments into the court registry as a "requirement," and it directs the court to "notify the tenant of the requirement." § 83.232(3).

Modifying the statutory procedure to provide for payments through an attorney's trust account or directly to the landlord may or may not be sound policy. But amending the statute "is the Legislature's prerogative, not ours." *Burton*, 362 So. 3d at 316. "[A] court 'may not rewrite the statute or ignore the words chosen by the Legislature so as to expand its terms.'" *Id.* (quoting *State v. Gabriel*, 314 So. 3d 1243, 1248 (Fla. 2021)).

*Second*, Landlord appeals to the evident purpose behind section 83.232(5): "to remedy the problem of commercial tenants remaining on the premises for the duration of litigation without paying the landlord rent." *Premici v. United Growth Properties, L.P.*, 648 So. 2d 1241, 1243 (Fla. 5th DCA 1995). But the Legislature enacts bills, not generalized purposes, and a law is not a spirit disembodied from its letter. Rather, a law consists only of the text that underwent the constitutionally prescribed

8

bicameralism and presentment procedures. *See* Art. III, §§ 7–8, Fla. Const. We have no authority to inject ourselves into that legislative process by re-writing a statute based on our speculation about its purpose. "[N]o legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (per curiam). "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Id.*

Regardless, we do not think that honoring section 83.232(5)'s plain meaning frustrates the purpose that we attributed to the statute in *Premici*. Requiring compliance with the statutory procedure does not turn a blind eye to tenants who remain in possession during the litigation while withholding rent. It simply requires that rent be paid in the manner—and any default be entered under the circumstance—that the statute prescribes.

*Third*, Landlord argues that Tenant consented to the trial court's modification of the statutory procedure and thus waived its right to object to the immediate default for possession. As an initial matter, Tenant certainly did not invite the error. In its motion to determine rent, Tenant represented that it was "prepared to pay into the court registry the amount of rent as determined by the Court," thus asking the court to direct payments into the court registry. Landlord nevertheless observes that before its tardy April 2022 rent payment, Tenant had paid rent into its counsel's trust account and later to Landlord directly, as the court had ordered it to do, and it did so without challenging the trial court's authority to direct payments outside the court registry.

We are not convinced by this "in for a penny, in for a pound" conception of waiver. "'Waiver' is the voluntary and intentional relinquishment of a known right or conduct [that implies] the relinquishment of a known right." *Kirschner v. Baldwin*, 988 So. 2d 1138, 1142 (Fla. 5th DCA 2008). That Tenant complied with the court's uninvited directives to make payments outside the court registry does not mean that it voluntarily and knowingly conceded the court's authority to enter an immediate default for possession.

9

And indeed, Tenant did not sit on its rights when it became clear that it faced default. In opposing Landlord's motion for default, Tenant argued that section 83.232(5)'s automatic default for possession is triggered only by a failure to pay court-ordered rent into the court registry. Therefore, Tenant timely raised and preserved the argument that it now presses on appeal.

*Fourth*, Landlord argues that *K.D. Lewis Enterprises Corp. v. Smith*, 445 So. 2d 1032 (Fla. 5th DCA 1984), forecloses Tenant's argument, but we think Landlord overreads our precedent. In *K.D.*, we analyzed the parallel statute for residential tenancies, § 83.60(2), Fla. Stat. (1981). The *K.D.* landlord had "moved to require the tenants to deposit the rent into the registry of the court," and "[w]hen [the tenants] failed to do so, the court issued writs of possession." *K.D.*, 445 So. 2d at 1033. On appeal, the *K.D.* tenants argued that because they asserted counterclaims against the landlord, the case was no longer an "action for possession" under the statute, and they thus had no statutory obligation to continue rent deposits and "were entitled to stay in their apartments without paying rent and without depositing the rent into the registry of the court." *Id.* at 1035. We rejected that argument and held that a tenant's assertion of counterclaims against the landlord does not make the case cease to be an action for possession. *See id.*

*K.D.* did not hold—and could not hold—that breach of an order directing payment directly to the landlord triggers an immediate default for possession. That's because the court order at issue in *K.D.* had directed payment into the court registry. Nonetheless, Landlord seizes on *K.D.*'s statement in passing that a tenant "loses only his right to retain possession of the premises if he fails to pay the rent to the landlord or into the registry of the court." *Id.* Even putting aside that it's dicta, at most, this brief statement in *K.D.* might imply only the more limited proposition "that payment of rent to the landlord obviates the need to deposit funds into the court registry." *Ross v. Metro. Dade Cnty.*, 142 B.R. 1013, 1017 (S.D. Fla. 1992), *aff'd without opinion*, 987 F.2d 774 (11th Cir. 1993). That a tenant's payment of rent directly to the landlord might obviate the need for him to make payments into the court registry does not mean a court may *order* him to make such direct

10

payments and then enter an immediate default for possession when he breaches that order.

*Fifth*, Landlord calls to our attention several decisions of our sister courts. Upon close inspection, we do not believe that those decisions conflict with our reading of section 83.232(5).

In *Chartier v. Sherman*, the Third District found no departure from the essential requirements of the law where the parties had stipulated that payments would be made directly to the landlord, the tenant failed to abide by the terms of the stipulated agreement, and the trial court entered a default for possession "after notice." 672 So. 2d 604, 604 (Fla. 3d DCA 1996) (per curiam). We perceive no direct conflict because *Chartier* rejected a certiorari petition rather than an appeal, *Chartier* did not elaborate the basis on which the tenant had sought certiorari relief, and *Chartier* involved a stipulated order. By contrast, the trial court here entered its order upon an opposed motion to disburse rent, and Tenant thus has not invited—or otherwise waived its right to challenge—the order's noncompliance with the statute.

In *Blandin v. Bay Porte Condominium Ass'n, Inc.*, the Fourth District confronted "the question of whether section 83.232, Florida Statutes, allows a trial court the discretion to excuse a tenant's failure to pay rent timely pursuant to court order." 988 So. 2d 666, 667 (Fla. 4th DCA 2008). That question is wholly distinct from the one that we address today. While it is true that the *Blandin* trial court had "ordered, pursuant to the parties' stipulation, that the [tenants] would pay the rent directly to [the landlord or the landlord's] counsel rather than into the court registry," *id.*, and that a breach of this order formed the basis for the default that the Fourth District affirmed, the Fourth District's opinion did not address any argument against the pay-the-landlord-directly nature of the order. And in any event, unlike the *Blandin* trial court, the trial court here did not provide for payment directly to the landlord on a stipulation of the parties, but rather upon an opposed motion for disbursement. That fact alone would suffice to distinguish *Blandin*, even if *Blandin* had confronted the question that Tenant raises here (which it did not).

In *Stetson Management Co. v. Fiddler's Elbow, Inc.*, the Second District reversed a trial court's order staying a final

11

judgment for possession in favor of a tenant who "did not timely deposit its monthly rent payment as required by court order." 18 So. 3d 717, 717 (Fla. 2d DCA 2009). The trial court had granted the landlord a final judgment for possession, but it nonetheless stayed the judgment, finding "[g]ood cause" to do so. *Id.* at 718. The Second District held that there is no "good cause" exception to the immediate nature of section 83.232(5)'s default for possession. *See id.* ("Under the mandatory terms of section 83.232(5), the trial court had no discretion to stay the final judgment of possession; [the landlord] was entitled to immediate possession of the property upon [the tenant's] failure to timely deposit its rent payment."). That holding does not conflict with our holding here. Landlord correctly notes that the *Stetson* trial court's rent order "reflect[ed] the parties' stipulation that . . . all rents . . . shall be deposited into an interest-bearing account." *Id.* But we distinguish *Stetson* for the same reasons we distinguish *Blandin*: *Stetson* addressed a question wholly distinct from the one we address today, the Second District's *Stetson* opinion did not address any argument against the pay-outside-the-court-registry nature of the trial court's order, and in any event, the *Stetson* trial court provided for payment outside the court registry on the parties' stipulation.

In the final analysis, we do not think that any of the cases that Landlord cites decided the precise question that Tenant raises here. At most, the cases show that some trial courts have a practice of allowing parties to stipulate that tenants will pay rent to accounts other than "the court registry" that section 83.232 describes. Unlike in those cases, the order under review did not rest on a stipulation, and Tenant therefore has preserved its right to challenge the order's noncompliance with the statutory requirements. And while we do not question the intentions behind the court's order, we cannot endorse it. The Legislature has determined that during a nonresidential eviction action, a tenant's rent payments "shall" be made "into the court registry," and only a "[f]ailure of the tenant to pay the rent into the court registry pursuant to court order" may trigger section 82.232's immediate

default for possession. § 83.232(1), (5). We have no license to disturb those legislative choices.[3]

## IV.

For the foregoing reasons, we **REVERSE** the trial court's order of default and final judgment of eviction after default, and we **REMAND** this case for further proceedings consistent with our opinion.

EISNAUGLE and HARRIS, JJ., concur.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

---

[3] Because we resolve this appeal on Tenant's statutory argument, we need not and do not consider Tenant's alternative argument that the immediate default for possession and final judgment violated its due-process rights. *See In re Holder*, 945 So. 2d 1130, 1133 (Fla. 2006) ("Of course, we have long subscribed to a principle of judicial restraint by which we avoid considering a constitutional question when the case can be decided on nonconstitutional grounds.").